Argued and submitted April 11, 2011, reversed and remanded May 16, 2012

**BLACHANA, LLC,**
dba Penner's Portsmouth Club,
*Petitioner,*

*v.*

**BUREAU OF LABOR AND INDUSTRIES,**
*Respondent.*

Oregon Bureau of Labor and Industries
0608; A143894

279 P3d 248

Jonathan M. Radmacher argued the cause for petitioner. With him on the brief was McEwen Gisvold LLP.

Greg Rios, Assistant Attorney General, argued the cause for respondent. With him on the brief were John R. Kroger, Attorney General, and David B. Thompson, Interim Solicitor General.

Before Ortega, Presiding Judge, and Brewer, Judge, and Sercombe, Judge.*

SERCOMBE, J.

* Brewer, J., *vice* Rosenblum, S. J.

## SERCOMBE, J.

Blachana, LLC, seeks judicial review of a final order issued by the Bureau of Labor and Industries (BOLI), contending that BOLI erred in concluding that Blachana was liable as an "[e]mployer" for wage claims under ORS 652.310(1). ORS 652.310(1) defines "employer" to include "any successor to the business of any employer." BOLI concluded that Blachana was liable for wage claims made by former employees of an entity, NW Sportsbar, Inc., that had previously operated a restaurant and bar at the same site as a restaurant and bar operated by Blachana. Blachana maintains that BOLI's interpretation of "successor to the business" in ORS 652.310(1) is not within the legislature's intended meaning of the term and that it is not a "successor to the business" of NW Sportsbar because it is a separate corporate entity with no connection to NW Sportsbar. Alternatively, Blachana contends that, even if BOLI's statutory interpretation is correct, BOLI erred in its application of the statute to the facts of this case. We ultimately conclude that Blachana is not a "successor to the business" of NW Sportsbar within the meaning of ORS 652.310(1) and reverse and remand.

The following facts are undisputed. The property related to this dispute is designed and has long been used to operate a bar and restaurant. Before 2005, the owner of the property, C.P. Underhill, LLC, (Underhill) and its manager, Janet Penner, operated a bar called the "Portsmouth Club" and a restaurant named "Mama's BBQ" at the location.[1] In 2005, NW Sportsbar entered into agreements with Underhill and Chris Penner[2] to lease the property and purchase the business assets, including the inventory and goodwill, of Underhill's business. NW Sportsbar subsequently operated a bar and restaurant at the location with food, drinks, and live music under the names of "Portsmouth Club"[3] and "Anchor

---

[1] Apparently, the property contains separate spaces for a restaurant and a bar. However, the extent of that separation, and the layout of property, is unclear from the record.

[2] Chris Penner's ownership interest in Underhill is unclear from the record. He executed the agreements with NW Sportsbar in his individual capacity.

[3] "Portsmouth Club" was an assumed business name that was first registered in 1988. NW Sportsbar registered as the authorized representative for "Portsmouth Club" in March 2005.

Grill"—the latter of which was on the sign outside the building. In early May 2006, after falling behind in its payment obligations to Underhill, NW Sportsbar's sole shareholder called the Penners and indicated that he was "done." Within days, NW Sportsbar surrendered the property and the business to Underhill pursuant to a surrender and release agreement. Under the terms of the agreement, NW Sportsbar surrendered the business and the real property to Underhill "in full satisfaction of NW Sportsbar's obligations and liabilities arising under the Sale Agreement and Lease." The bar and restaurant closed. NW Sportsbar's shareholder left town without paying four employees. Underhill took possession of the property along with the bar and restaurant equipment that remained on the premises.[4] Underhill, however, took no ownership or management interest in NW Sportsbar.

Approximately one week later, Janet Penner organized and registered Blachana, LLC, as a corporation. The next day, Blachana registered the assumed business name of "Penner's Portsmouth Club." Blachana applied for and received a liquor license, lottery license, city business license, and tax and employer identification numbers.[5] In June 2006, a BOLI employee twice called the phone number registered for NW Sportsbar, and Chris Penner answered the phone by identifying the business as the "Portsmouth Club." Blachana opened "Penner's Portsmouth Club" in the bar area of the property on June 26, 2006. The restaurant area initially remained closed and was used for storage. In the months that followed, Blachana began offering live music at the bar and replaced all of the kitchen equipment except for the dishwasher station. Blachana continued to use much of the bar equipment that remained after NW Sportsbar surrendered

---

[4] Some of the equipment that was originally transferred to NW Sportsbar was no longer on the premises when Underhill regained possession.

[5] The surrender and release agreement listed the assets being surrendered, which included,

"[t]o the extent transferable, all * * * licenses, permits, * * * and other registrations of any [governmental entity] held by NW Sportsbar and required or appropriate for the conduct of the Business[.]"

The record does not indicate, and we do not address, whether Blachana could legally use the licenses and permits that NW Sportsbar had surrendered.

the premises and has also used the same beer vendor. Blachana, however, contracted with a different food vendor.

Blachana did not employ any of NW Sportsbar's former employees. After almost a year of operation, Blachana registered the assumed business name of "Portsmouth Pizza and Pub" and began cooking and serving pizza.

In the months after NW Sportsbar ceased doing business, its former employees filed wage claims with BOLI to recover unpaid wages. BOLI paid the claims, totaling $7,047.62, from the Wage Security Fund. *See* ORS 652.409 (establishing fund to pay wage claims if employer is no longer in business and is without sufficient assets to pay the claim). Subsequently, BOLI notified Blachana that it, as a "successor" to NW Sportsbar, was responsible for the claims. Following a contested case hearing with an administrative law judge, BOLI's commissioner issued a final order concluding that Blachana was a "'successor to the business' of NW [Sportsbar] within the meaning of ORS 652.310(1) and, as an employer, is subject to the provisions of [the wage claim laws]." The commissioner ordered Blachana to reimburse BOLI for the unpaid wages, plus penalties authorized by statute. *See* ORS 652.414(3) (authorizing a penalty in the amount of 25 percent of the wages paid from the fund). Blachana petitioned for judicial review, challenging BOLI's determination that it is a "successor" to NW Sportsbar.

BOLI has statutory authority to recover from an "employer" the amounts paid from the Wage Security Fund. ORS 652.414(3) (authorizing BOLI's commissioner to commence an action to recover amounts paid from the fund "from the employer, or other persons or property liable for the unpaid wages"). An "[e]mployer" is

> "any person who in this state, directly or through an agent, engages personal services of one or more employees and includes *any successor to the business of any employer*, or any lessee or purchaser of any employer's business property for the continuance of the same business, so far as such employer has not paid employees in full."

ORS 652.310(1) (emphasis added).[6]

---

[6] BOLI has promulgated an administrative rule, OAR 839-001-0500(10), defining "successor" as

Blachana did not purchase or lease NW Sportsbar's business property; thus, Blachana's liability for unpaid wages was premised on whether it was a "successor to the business" of NW Sportsbar. In answering that question during the administrative proceedings, BOLI analyzed

"[(1)] the name or identity of the business; [(2)] its location; [(3)] the lapse of time between the previous operation and the new operation; [(4)] whether the same or substantially the same work force [was] employed; [(5)] whether the same product is manufactured or the same service is offered; and [(6)] whether the same machinery, equipment, or methods of production are used."[7]

BOLI concluded that Blachana was a "successor to the business" of NW Sportsbar because it operated under a similar business name, used the same beer vendor, occupied the same physical space, used much of the same equipment to offer the same type of service (*i.e.*, food, drinks, and live music in a club atmosphere), and opened for business only 47 days after NW Sportsbar ceased doing business.[8] Thus, BOLI concluded that Blachana fit within the definition of "employer" in ORS 652.310(1).

On appeal, Blachana contends that BOLI misinterpreted ORS 652.310(1) when it concluded that Blachana was a "successor to the business" of NW Sportsbar. When an agency's interpretation of a statute is at issue, as it is here, our review depends on the nature of the statutory term. *See Springfield Education Assn. v. School Dist.*, 290 Or 217, 223,

---

"one who follows an employer in ownership or control of a business so far as such employer has not paid employees in full. A successor employer may be any successor to the business of any employer, or any lessee or purchaser of any employer's business property for the continuation of the same business."

Blachana asserts that the administrative definition is duplicative of the statutory text in ORS 652.310(1), and, thus, it challenges only BOLI's action under ORS 652.310(1). BOLI agrees that OAR 839-001-0500(10) tracks the text of ORS 652.310(1). Because Blachana is challenging BOLI's determination that Blachana was an "employer" as the term is defined in ORS 652.310(1), we do not address OAR 839-001-0500(10).

[7] The parties dispute whether the factors applied by BOLI had the status of a rule adopted through agency adjudications. In any event, the legal issue is the same—whether BOLI's interpretation and application of ORS 652.310(1) was consistent with the legislature's intended meaning of that statute.

[8] The only factor that BOLI found that was not indicative of successorship was that Blachana did not employ any of the same employees as NW Sportsbar.

621 P2d 547 (1980) (identifying "exact," "inexact," and "delegative" statutory terms and the proper method of analyzing each). The parties implicitly assume, and we agree, that the relevant wording of ORS 652.310(1), "any successor to the business," is an "inexact term." Inexact terms express a complete legislative policy but have a "less precise" meaning that initially requires agency interpretation. *J. R. Simplot Co. v. Dept. of Agriculture*, 340 Or 188, 197, 131 P3d 162 (2006); *Coast Security Mortgage Corp. v. Real Estate Agency*, 331 Or 348, 354, 15 P3d 29 (2000). An agency "may express their interpretation of the laws they are charged with administering either by adjudication or by rulemaking, or both." *Trebesch v. Employment Division*, 300 Or 264, 273, 710 P2d 136 (1985).

We "review[ ] the agency's actions pursuant to [inexact terms] as a matter of law to determine whether the agency's action effectuated the legislative policy" in the statute. *J. R. Simplot Co.*, 340 Or at 197. To do so, we determine the legislature's intended meaning of the relevant statutory text, *Coast Security Mortgage Corp.*, 331 Or at 354, by examining the text and context of the statute, including any relevant legislative history, and, if ambiguity remains after that examination, resorting to applicable statutory construction canons. *State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009).

"When applying [inexact terms] to specific facts, whether by order or by rule, the task of the agency, and ultimately of the court, is to determine whether the legislature intended the compass of the words to include those facts." *Springfield Education Assn.*, 290 Or at 224. Our task in this case, therefore, is to determine what the legislature intended in ORS 652.310(1) and whether the agency's action in this case—its determination that Blachana was a successor under the factors noted earlier—is consistent with that intended meaning. *Coast Security Mortgage Corp.*, 331 Or at 354.

On appeal, Blachana argues that the legislature intended to limit the meaning of "successor to the business" to the common-law principles of successor liability in corporate law. Blachana points to the "general rule" in corporate

law that "where one corporation sells or otherwise transfers all of its assets to another corporation, the latter is not liable for the debts and liabilities of the transferor." Blachana notes that there are four recognized exceptions to that general rule. The "successor" corporation can be liable if (1) the new company agreed to assume the debt or liability, (2) the new company is a mere continuation of the old business, (3) the transaction was a *de facto* merger or consolidation, or (4) the transfer of assets to the new company was fraudulent. *See Erickson v. Grande Ronde Lbr. Co.*, 162 Or 556, 568, 92 P2d 170, *modified*, 94 P2d 139 (1939). Accordingly, Blachana contends that BOLI exceeded its statutory authority by impermissibly imposing liability on a corporate entity that bears no connection to NW Sportsbar and does not fit within any of the recognized exceptions to the "general rule."

We begin our inquiry with the relevant text. In examining statutory text, we give words of common usage their plain, natural, and ordinary meaning unless the text or context indicates that another meaning was intended. *Edwards v. Riverdale School District*, 220 Or App 509, 513-14, 188 P3d 317 (2008). We give words that have well-defined legal meanings those meanings. *Bergerson v. Salem-Keizer School District*, 341 Or 401, 413, 144 P3d 918 (2006). None of the relevant terms in this case is defined in the statute, so we first look to definitions from dictionaries in use at the time that the statute was enacted to provide possible meanings. *See State v. Perry*, 336 Or 49, 53, 77 P3d 313 (2003). When the definition of "employer" was enacted by the legislature in 1931, "successor" was defined by the dictionary at that time as

"[o]ne that succeeds or follows; one who takes the place which another has left, and sustains the like part or character; one who takes the place of another by succession[.]"

*Webster's New Int'l Dictionary* 2073 (1910). As a legal term at that time, "successor" was defined as

"[o]ne who succeeds to the rights or the place of another; particularly, the person or persons who constitute a corporation after the death or removal of those who preceded them as corporators."

*Black's Law Dictionary* 1674 (3d ed 1933). ORS 652.310(1) requires that a successor must be to *the* business of any employer. If successor is given its ordinary meaning, and in light of the use of the definite article "the," an employer includes one that succeeds, follows, or replaces the predecessor in *the* business of that employer. Even if "successor" is given its legal definition, the possible meaning is similar: one that succeeds to the rights or place of the predecessor in the business. Both definitions imply that a "successor to the business" substitutes in the place of the predecessor in the business.

Those definitions, however, do not plainly resolve what it means to substitute in the place of the predecessor in the predecessor's business. On one hand, the legislature could have intended that a successor is only a party that succeeds, by some operation of law, to the legal rights and obligations of the predecessor. In that sense, the text at issue in this case would only encompass circumstances where a party could be held liable for the predecessor's liabilities as a function of the law outside ORS chapter 652, such as contract, agency, common-law successor liability, or other statutory law. On the other hand, the legislature could have intended a broader meaning that would also encompass a successor that serves as a "functional" substitute for the predecessor in the business. In other words, a successor may include both a "legal substitute" for the predecessor as well as a party that replaces a predecessor in the business in a functional sense but does not necessarily assume the predecessor's rights and liabilities as a matter of any law other than ORS 652.310(1).

The context of the statute supports the conclusion that the legislature intended "successor to the business" to include only those parties that are "legal substitutes" for the predecessor. For context, we examine additional text in ORS 652.310(1) that informs legislative intent. As noted, an "[e]mployer" under ORS 652.310(1) includes "any successor to the business of any employer, *or* any lessee or purchaser of any employer's business property for the continuance of the same business." (Emphasis added.) The legislature's use of "or" may indicate that the phrases are intended to be disjunctive and distinctive. An interpretation of the statute that would give distinctive meaning to both clauses would be that

the legislature intended to impose liability in the first clause on a party that succeeds to the rights and liabilities of the predecessor as a matter of law and, in the second clause, defined an additional circumstance—when a party purchases or leases the employer's business property to continue the same business—in which a party that would not be liable as a "legal successor" could still be culpable for a wage claim. That reading of the text gives distinct meaning to both of those clauses in the statute. *State v. Mayorga*, 186 Or App 175, 180, 62 P3d 818 (2003) (statute should be interpreted, when possible, to give effect to all provisions). If we ascribe an intended meaning of "successor to the business" in the first clause to include "functional successors," the text in the second clause would then be duplicative in that a party that purchases business property to continue the same business is necessarily a functional replacement of the predecessor in the business.

The common-law context in which the legislature enacted the definition of "employer" now found in ORS 652.310(1) also informs the legislature's intent. *See Tyree Oil, Inc. v. BOLI*, 168 Or App 278, 282, 7 P3d 571 (2000) (noting that the common law "sometimes is helpful in providing a backdrop against which the statute was enacted"). At the time that the legislature defined "employer" in the wage claim laws, the common-law rule cited by Blachana was in effect—that is, that the transfer or sale of assets between corporate entities does not automatically make the transferee liable for the transferor's debts and liabilities. *See Erickson*, 162 Or at 568. That common-law rule is based on the legislative policy that corporations are distinct corporate entities with a separate legal existence. *See Dahlke v. Cascade Acoustics, Inc.*, 216 Or App 27, 37, 171 P3d 992 (2007), *rev den*, 344 Or 401 (2008). It follows, therefore, that the legislature understood "successor" to carry a technical meaning that reflected the policy that legal obligations in business are not transferred to separate entities absent some operation of the law. That policy, when considered with the legislature's use of "successor to the business," indicates that the legislature intended the definition of "successor" to be limited to a party

that has succeeded by law to the legal rights and obligations of the predecessor in that business.[9]

In sum, the underlying context of ORS 652.310(1) indicates that the legislature intended that the employer that received the benefit of the wage claimant's services should be held liable for the obligation it incurred. By including "successor" in the statutory definition of employer, the legislature recognized that any party that, as a matter of law, assumed or had conferred upon it, the legal rights and obligations of the predecessor should also be held culpable for any wage claims. That understanding of legislative intent is consistent with the statutory text and the common-law context in which the statute was enacted.

We next evaluate whether Blachana was a "successor to the business" of NW Sportsbar in light of the intended meaning of ORS 652.310(1). Nothing in the record establishes that Blachana succeeded to the rights and obligations of NW Sportsbar as a matter of law. Blachana and NW Sportsbar were separate corporate entities and there was no contractual relationship between them. Blachana had no financial or ownership interest in NW Sportsbar. NW Sportsbar surrendered some, but not all, of the assets of the Portsmouth Club and Anchor Grill to Underhill, but there is nothing to indicate that any other interest of NW Sportsbar was surrendered. Nothing indicates that Blachana could be considered liable for NW Sportsbar's debts and liabilities under the common-law successor liability rule, and there does not appear to be any other source of law under which Blachana could be considered to have succeeded to the legal rights and obligations of NW Sportsbar. Accordingly, we conclude that BOLI erred in concluding that Blachana was a "successor to the business" of NW Sportsbar under ORS 652.310(1).

Reversed and remanded.

---

[9] To be clear, we do not hold that the legislature intended to limit liability in ORS 652.310(1) to only those parties that would be liable under the common-law rule of successor liability. Rather, that common-law rule merely provides important context for understanding the legislature's intent.