676 January 16, 2014 No. 2

IN THE SUPREME COURT OF THE
STATE OF OREGON

BLACHANA, LLC,
dba Penner's Portsmouth Club,

*Petitioner,*
*Respondent on Review,*

*v.*

BUREAU OF LABOR AND INDUSTRIES,

*Respondent,*
*Petitioner on Review.*

(BOLI 0608; CA A143894; SC S060789)

On review from the Court of Appeals.*

Argued and submitted June 5, 2013.

Jonathan M. Radmacher, McEwen Gisvold LLP, Portland, argued the cause and filed the brief for respondent on review.

Karla H. Ferrall, Assistant Attorney General, Salem, argued the cause and filed the brief for petitioner on review. With her on the brief were Mary H. Williams, Deputy Attorney General, and Anna M. Joyce, Solicitor General.

Shenoa L. Payne, Portland, filed a brief for *amicus curiae* Oregon Trial Lawyers Association.

Before Balmer, Chief Justice, Kistler, Walters, Linder, Landau, and Baldwin, Justices.**

WALTERS, J.

The decision of the Court of Appeals is reversed. The final order of the Bureau of Labor and Industries is affirmed.

_____

* Judicial review from a final order of the Bureau of Labor and Industries. 250 Or App 80, 279 P3d 248 (2012).

** Brewer, J., did not participate in the consideration or decision of this case.

**WALTERS, J.**

In this wage claim case, the issue is whether the Bureau of Labor and Industries (BOLI) correctly determined that a business entity, Blachana, LLC, is a "successor" employer and must, therefore, reimburse BOLI for wages paid from the Wage Security Fund on behalf of four wage claimants. The employees had worked for NW Sportsbar Inc. (NW Sportsbar) before that corporation went out of business and surrendered its property and the business to Blachana. On judicial review of BOLI's final order assigning liability to Blachana, the Court of Appeals reversed, holding that Blachana was not a "successor to the business" of NW Sportsbar, as that phrase is used in the wage claim statute, ORS 652.310(1).[1] *Blachana, LLC v. Bureau of Labor and Industries*, 250 Or App 80, 279 P3d 248 (2012). For the reasons that follow, we conclude that BOLI did not err in deciding that an entity is a successor to a business if it "conducts essentially the same business as conducted by the predecessor" or in applying that test in this case. We therefore reverse the decision of the Court of Appeals.

The following facts are undisputed. Janet and Chris Penner, mother and son, owned and managed a limited liability corporation called CP Underhill LLC (CPU). CPU owned a building in Portland and, in that building, operated a bar called the Portsmouth Club and a restaurant called Mama's BBQ. Since 1940, five different businesses had operated a bar and restaurant in that location, and customers had referred to each business as the "Portsmouth Club." In February 2005, CPU executed an agreement to lease the building to NW Sportsbar for five years. The same day, CPU also executed a sales agreement under which NW Sportsbar bought the inventory of the Portsmouth Club for $50,000 and the good will of the Portsmouth Club for $285,000. The president of NW Sportsbar, Dustin Drago, signed both agreements on behalf of that company. Drago then registered with the Oregon Corporation Division as the authorized representative for "Portsmouth Club," an assumed business name that had been registered in 1988.

---

[1] We set out and discuss the text of ORS 652.310(1) later in this opinion.

For the rest of 2005 and until May 2006, NW Sportsbar operated its business in the leased building under the names "Portsmouth Club" and "Anchor Grill." The business offered food and drinks and live music as entertainment. Drago managed the business and hired the four wage claimants, two in 2005 and two in 2006. Drago paid some wages in 2005, but stopped paying any of the wage claimants' wages in 2006. The two wage claimants hired in 2006 never received any wages for their work.

By May 2006, Drago also was three months behind in his payments under the lease and sales agreements and began to discuss with Janet Penner the closing, and CPU's repossession, of the business. In early May 2006, "Portsmouth Club" closed its doors, and, on May 9, 2006, Drago and CPU entered into a Surrender and Release Agreement, under which NW Sportsbar surrendered all its businesses assets, including the business name and goodwill, and relinquished possession of the personal property left in the building to CPU. In exchange, CPU released NW Sportsbar from its obligations under the lease and sales agreements. Drago then left town without paying the four employees.

About a week later, Janet Penner registered Blachana, LLC, with the Oregon Corporation Division, listing herself as a manager and member[2] and stating Blachana's assumed business name as "Penner's Portsmouth Club." Blachana then obtained a liquor license and other required permits and licenses and on June 26, 2006, opened its business in the building that CPU owned and that had been leased to NW Sportsbar. Blanchana operated "Penner's Portsmouth Club" as a bar; its business did not initially provide meals. By late summer, the business included live musical entertainment[3] and, by May 2007, also included a restaurant that used the new assumed business name "Portsmouth Pizza and Pub." Blachana did not employ any of the same employees as NW Sportsbar. It used most of the same bar equipment and used the same beer vendor that NW Sportsbar had used, but used a different food vendor.

---

[2] The record reflects that Chris Penner also is a member of Blachana, LLC.

[3] By the time of the hearing before BOLI, the business had stopped offering live music.

Meanwhile, on May 18, 2006, one of NW Sportsbar's employees filed a wage claim with BOLI. The investigator assigned to the employee's case twice called the telephone number on file for NW Sportsbar and, each time, Chris Penner answered the phone by identifying the business as "Portsmouth Club." Three other former NW Sportsbar employees eventually also filed wage claims; the four wage claims totaled just over $7,000. The investigator attempted unsuccessfully to locate Drago and ultimately determined that the wage claims were valid, that NW Sportsbar had ceased doing business, and that NW Sportsbar's former employees' wage claims could not be fully and promptly paid except through the Wage Security Fund, a fund established to pay wage claimants if the employer no longer is in business or is without sufficient assets to pay the claims. *See* ORS 652.409 (establishing Wage Security Fund for that purpose); ORS 652.414(1) (authorizing payment of wage claims in those circumstances). BOLI paid the claims through the Wage Security Fund and then notified Blachana that it was responsible for the unpaid wages under ORS 652.414(3) (authorizing commissioner to take appropriate action to recover from "employer, or other persons or property liable for the unpaid wages" amounts paid from Wage Security Fund) and ORS 652.310(1) (defining "employer" for purposes of ORS 652.414 to include "any successor to the business of any employer, or any lessee or purchaser of any employer's business property for the continuance of the same business").

After a contested case hearing before an administrative law judge, BOLI's commissioner concluded that Blachana was a "successor to the business of" NW Sportsbar. In his Final Order, the commissioner explained that BOLI consistently had held that the test to determine whether an employer is a successor in a wage claim case is "whether it conducts essentially the same business as conducted by the predecessor." *In re Blachana, LLC*, 30 BOLI 197, 221 (2009). The commissioner then listed several factors that the agency considers in determining whether an employer is conducting "essentially the same business," including the name or identity of the business, its location, the lapse of time between the previous operation and the new operation, whether the businesses employed substantially the same workforce, whether the same product was

manufactured or the same services offered, and whether the same machinery, equipment, or methods of production were used. *Id*. The commissioner further explained that, under the agency's jurisprudence, he need not find every factor to be present to conclude that a business is a successor employer but, instead, considers the factors together to reach a determination. *Id*. Based on his evaluation and weighing of those factors, the commissioner concluded that, during its first year in business, Blachana conducted essentially the same business as NW Sportsbar and was, therefore, a "successor to [that] business" as that phrase is used in ORS 652.310(1). *Id*. at 225. Thus, the commissioner ruled, Blachana was responsible for reimbursing the Wage Security Fund for the amount that had been paid to NW Sportsbar's former employees, plus penalties authorized under ORS 652.414(3) (authorizing a penalty of up to $200). *Id*. at 226.

    Blachana sought review of that determination in the Court of Appeals. In that court, Blachana argued that BOLI's interpretation of the statutory phrase "successor to the business" was not within the legislature's intended meaning of that phrase and that Blachana was not a successor to NW Sportsbar, because it was a separate corporate entity with no connection to NW Sportsbar. The Court of Appeals agreed. After considering dictionary definitions of the operative words of the statute, the court concluded that those definitions did not resolve the issue. The court observed that the legislature could have intended a successor to be a "legal" substitute, which the court described as "a party that succeeds, by some operation of law, to the legal rights and obligations of the predecessor," meaning that only parties that "could be held liable for the predecessor's liabilities as a function of law outside ORS chapter 652, such as contract, agency, common-law successor liability, or other statutory law" would be liable for a predecessor's wage claims as a successor "employer" under ORS 652.310(1) and ORS 652.414(3). *Blachana*, 250 Or App at 87. Or, the court continued, the legislature could have intended a broader meaning, imposing liability on any "functional" successor, which the court described as any business that "replaces the predecessor business in a functional sense but does not necessarily assume the predecessor's rights and liabilities as a matter of any law other than ORS 652.310(1)." *Id*.

To resolve the question, the court turned to the context of the phrase "successor to the business" as used in ORS 652.310(1). According to the court, that context includes the second clause of the definition of employer—"or any lessee or purchaser of any employer's business property for the continuance of the same business"—as well as the common law in 1931, when ORS 652.310(1) was enacted. In the court's view, because the common law in 1931 provided that "the transfer of assets between corporate entities does not automatically make the transferee liable for the transferor's debts and liabilities," any "lessee or purchaser of any employer's business property for the continuation of the business" would not be liable for the debts and liabilities of the predecessor. *Blachana*, 250 Or App at 88.[4] Thus, the court stated, an interpretation of the text of ORS 652.310(1) that would give meaning to both parts of the definition of "employer" is that

> "the legislature intended to impose liability in the first clause ['successor to the business'] on a party that succeeds to the rights and liabilities of the predecessor as a matter of law and, in the second clause, defined an additional circumstance—when a party purchases or leases the employer's business property to continue the same business—in which a party that would not be liable as a 'legal successor' could still be culpable for a wage claim."

*Id*. It followed, the Court of Appeals concluded, that the legislature intended the definition of "successor to the business" to be "limited to a party that has succeeded by law to the legal rights and obligations of the predecessor in that business." *Id*. at 88-89.

After applying that interpretation to the facts of the case, the Court of Appeals held that the record did not establish that Blachana was the "legal successor" to NW Sportsbar. The court stated:

> "Blachana and NW Sportsbar were separate corporate entities and there was no contractual relationship between them. Blachana had no financial or ownership interest

---

[4] Although not necessary to our decision in this case, we question whether that premise is correct. As we will explain, at common law, a lessee or purchaser of business property could be liable for the debts of a predecessor in certain circumstances, including when the purchasing entity is a "mere continuation" of the selling entity. *See* below, 354 Or at 690.

in NW Sportsbar. NW Sportsbar surrendered some, but not all, of the assets of the Portsmouth Club and Anchor Grill to [CPU], but there is nothing to indicate that any other interest of NW Sportsbar was surrendered. Nothing indicates that Blachana could be considered liable for NW Sportsbar's debts and liabilities under the common-law successor liability rule, and there does not appear to be any other source of law under which Blachana could be considered to have succeeded to the legal rights and obligations of NW Sportsbar. Accordingly, we conclude that BOLI erred in concluding that Blachana was a 'successor to the business' of NW Sportsbar under ORS 652.310(1)."

*Id*. at 89.

As we explain below, we disagree with the Court of Appeals' conclusion that an entity is liable as a "successor to the business" under ORS 652.310(1) only when the entity would be liable for a predecessor employer's unpaid wages under some law other than that statute. We begin our analysis by describing in greater detail the statutory scheme governing this dispute.

In 1931, the legislature enacted a statute providing for the payment and collection of wages, including the enforcement of employees' rights to make wage claims against employers that had not paid employees' wages in full. Or Laws 1931, ch 287. Under the original statutory scheme, and until 1985, the statute required the commissioner of the bureau of labor[5] to enforce employees' rights to make wage claims and gave the commissioner the authority to investigate wage claims and negotiate settlements between employers and employees. In those instances when settlement could not be reached, the commissioner was authorized to take assignments of wage claims in trust for assigning employees. *Id*., § 6; ORS 652.330 (1985). The commissioner then had the authority to take action against "employers" to collect unpaid wages.[6] *Id*. As we will explain, "employer" is a defined term, which, since 1931, has included entities other than the entity that engaged the personal services of one

---

[5] BOLI was not established as a separate department until 1979. Or Laws 1979, ch 659, § 2.

[6] In 1979, the legislature provided for alternative enforcement through administrative proceedings. Or Laws 1979, ch 695, § 4; ORS 652.332.

or more employees. In 1957, the legislature created a Wage Collection Account (which still exists today), into which any money that the commissioner collects in trust for a wage claimant, including fines, is deposited "and appropriated continuously for the purpose of payment to the persons entitled thereto." Or Laws 1957, ch 465, § 8; ORS 652.400.

Under that scheme, if the commissioner could not collect unpaid wages from an "employer" for employees who had worked without compensation, then those employees would have no recourse. In 1985, the legislature addressed that problem by creating the Wage Security Fund, funded by employer taxes, to pay wage claims in those cases in which the commissioner determined that the employer against whom the claim was filed had ceased doing business and was without sufficient assets to pay the wage claim. Or Laws 1985, ch 409, § 4; ORS 652.409 (establishing Wage Security Fund); ORS 657.439(2)(a) (providing for funding of Wage Security Fund through employer tax, collected in conjunction with unemployment taxes).

Today, under ORS 652.414, when an employee has filed a claim for unpaid wages and BOLI has determined that the employer is incapable of paying the wage claim, the commissioner will pay the claim—up to $4,000—out of the Wage Security Fund. ORS 652.414 provides, in part:

"(1)   When an employee files a wage claim under this chapter for wages earned and unpaid, and the Commissioner of the Bureau of Labor and Industries determines that the employer against whom the claim was filed has ceased doing business and is without sufficient assets to pay the wage claim and the wage claim cannot otherwise be fully and promptly paid, the commissioner, after determining that the claim is valid, shall pay the claimant, to the extent provided in subsection (2) of this section:

"* * * * *

"(2)   The commissioner shall pay the unpaid amount of wages earned as provided in subsection (1) of this section only to the extent of $4,000[.]"

Subsection (3) of that statute permits the commissioner to take legal action to recover amounts paid from the Wage Security Fund from the employer:

"The commissioner may commence an appropriate action, suit or proceeding to recover from the employer, or other persons or property liable for the unpaid wages, amounts paid from the Wage Security Fund under subsection (1) of this section. In addition to costs and disbursements, the commissioner is entitled to recover reasonable attorney fees at trial and on appeal, together with a penalty of 25 percent of the amount of wages paid from the Wage Security Fund or $200, whichever amount is the greater. All amounts recovered by the commissioner under this subsection and subsection (4) of this section are appropriated continuously to the commissioner to carry out the provisions of this section."

For purposes of ORS 652.414, "employer" is defined as

"any person who in this state, directly or through an agent, engages personal services of one or more employees and includes any successor to the business of any employer, or any lessee or purchaser of any employer's business property for the continuance of the same business, so far as such employer has not paid employees in full."

ORS 652.310(1).

It is that definition of "employer" that is at issue in this case. The wage claimants in this case worked for NW Sportsbar. Blachana did not employ them directly or through an agent; Blachana obtained NW Sportsbar's business assets, including its business name, goodwill, and the property left in the building, through repossession. BOLI relies on the first clause of the definition of "employer" in ORS 652.310—"any successor to the business of any employer"— in arguing that Blachana is liable for NW Sportsbar's unpaid wages under the wage hour statute.[7]

The phrase "successor to the business" is not defined in the statutes, and BOLI's regulations define the word "successor" in essentially the same terms as are used in the

---

[7] BOLI may have relied on the first clause because it assumed that the acquisition of assets by repossession does not constitute the "purchase" of assets and, thus, does not strictly fit within the second clause in the definition of employer: "any lessee or purchaser of any employer's business property." The parties do not raise that issue, and we do not decide it.

statute.[8] However, BOLI has interpreted the phrase "successor to the business" through adjudication, in final orders issued in contested cases. *See Trebesch v. Employment Division*, 300 Or 264, 273, 710 P2d 136 (1985) ("Agencies generally may express their interpretation of the laws they are charged with administering either by adjudication or by rulemaking, or both."); *Springfield Education Assn. v. School Dist.*, 290 Or 217, 226, 621 P2d 547 (1980) ("An agency may express its determination of which interpretation effectuates the statutory policy either by rule or, as here, by order in a contested case."). In 1987, BOLI announced that, "[t]o decide whether an employer is a 'successor,' the test is whether it conducts essentially the same business that the predecessor did." *In re Anita's Flowers & Boutique*, 6 BOLI 258, 267-68 (1987). Having articulated that test in *Anita's Flowers*, BOLI then set out a nonexclusive list of factors that it would consider in deciding whether a company conducts "essentially the same business" as a predecessor:

> "The elements to look for include: the name or identity of the business; its location; the lapse of time between the previous operation and the new operation; the same or substantially the same workforce employed; the same product is manufactured or the same service is offered; and, the same machinery, equipment, or methods of production are used. Not every element needs to be present to find an employer to be a successor; the facts must be considered together to reach a decision."

*Id*. Since 1987, when it decided *Anita's Flowers*, BOLI consistently has applied that test and considered those factors to determine whether a business is a successor under the wage claim law. *See*, *e.g.*, *In re Bukovina Express, Inc.*, 27 BOLI

---

[8] BOLI has promulgated a regulation defining various terms. OAR 839-001-0500 provides, in part:

"*****

"(6) 'Employer' has the same meaning given it in ORS 652.310(1).

"*****

"(10) 'Successor' means one who follows an employer in ownership or control of a business so far as such employer has not paid employees in full. A successor employer may be any successor to the business of any employer, or any lessee or purchaser of any employer's business property for the continuation of the same business."

184, 201 (2006); *In re Fjord*, 21 BOLI 260, 286 (2001); *In re Tire Liquidators*, 10 BOLI 84, 93 (1991). And, as explained above, BOLI used that test and applied that nonexclusive list of factors in this case.

In this court, as it did in the Court of Appeals, Blachana argues that BOLI's interpretation of the phrase "successor to the business" in ORS 652.310(1) is outside the legislature's intended meaning of that phrase. When a disputed statutory term is part of a regulatory scheme to be administered by an administrative agency, this court first determines whether that term is an "exact" term, an "inexact" term, or a "delegative" term—that is, how much interpretive authority the legislature delegated to the agency when using that term. *Springfield Education Assn.*, 290 Or at 223. "Exact" terms are terms of precise meaning. *Id*. "Inexact" terms communicate a complete policy statement, but the words used may be imprecise, requiring further interpretation. *Id*. at 224-25; *Schleiss v. SAIF*, 354 Or 637, 642, 317 P3d 244 (2013) (explaining that inexact term is "neither a term so precise that no interpretation is necessary nor a term (such as 'good cause') indicating that the legislature intended to delegate the determination of its meaning to an agency charged with implementing the statute"). Finally, "delegative" terms require the agency to make policy determinations in the first instance. *Springfield Education Assn.*, 290 Or at 223.

The Court of Appeals held, and the parties agree, that, as used in ORS 652.310(1), the phrase "successor to the business" is an inexact term. We also agree. It embodies a complete legislative policy, but it is not so precise as to be an "exact" term. The words are capable of more than one meaning, and, therefore, BOLI was required to interpret them in order to effectuate the legislative policy. Accordingly, this court must review BOLI's interpretation to ensure that it is consistent with the legislature's intent. *Coffey v. Board of Geologist Examiners*, 348 Or 494, 502-06, 235 P3d 686 (2010) (so analyzing agency action). In that regard, the agency's interpretation of the statute is not entitled to deference on review. *Schleiss*, 354 Or at 642. The court interprets the relevant statute using the usual methods for statutory interpretation. *Coast Security Mortgage Corp. v.*

*Real Estate Agency*, 331 Or 348, 354-55, 15 P3d 29 (2000) (applying usual interpretive paradigm to determine meaning of inexact term). We examine the text and context of the statute and, if helpful, legislative history. *State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009).

As noted, the phrase "successor to the business," ORS 652.310(1), is not defined in the statutes. In construing that phrase, we seek to discern the intent of the legislature that enacted the statute. *State v. Perry*, 336 Or 49, 52, 77 P3d 313 (2003). As we have explained, the legislature enacted the original version of ORS 652.310(1) in 1931. Or Laws 1931, ch 287. That statute has not been amended in any way pertinent to this case since then, and this court has not before construed the phrase at issue here. As the court stated in *Perry*, in construing statutes that were enacted many years ago, we consult dictionaries that were in use at the time. 336 Or at 53. Moreover, if a word has a well-defined legal meaning, we give the word that meaning in construing the statute. *Id*.

At the time that the legislature enacted ORS 652.310(1), law dictionaries generally defined "successor" as one who follows another. *See, e.g.*, John Bouvier, 3 *Bouvier's Law Dictionary and Concise Encyclopedia* 3176 (3d ed 1914) (defining "successor" as "[o]ne who follows or comes into the place of another"); Stewart Rapalje, II *Dictionary of American and English Law* 1233 (1883) (defining "successor" as "[o]ne that follows in the place of another"); Henry Campbell Black*, A Dictionary of Law* 1134 (1891) (defining "successor" as "[o]ne who succeeds to the rights or the place of another; particularly the person or persons who constitute a corporation after the death or removal of those who preceded them as corporations"). The contemporaneous general dictionary definition of successor was:

> "one that succeeds or follows; one who takes the place which another has left, and sustains the like part or character; one who takes the place of another by succession."

*Webster's New Int'l Dictionary* 2073 (1910).

Blachana emphasizes the part of those definitions that requires that the entity that follows another must

"sustain[ ] the like part or character." It argues that it should not be enough for an entity simply to follow another in time; to be a successor, the entity must, in some way, step into the shoes of its predecessor. BOLI agrees, as do we. To be a "successor," as that term is used in ORS 652.310(1), an entity must do more than merely follow its predecessor chronologically; it must conduct a business that "sustains the like part or character" of the previously conducted business.

We reach that conclusion not only from the dictionary definition of the word "successor," but also from the context in which the legislature used it. As the Court of Appeals correctly explained, that context includes the second part of the definition of employer in ORS 652.310(1)—"any lessee or purchaser of any employer's business property for the continuance of the same business." Under that clause, a lessee or purchaser of an employer's business property is liable for wages owed by a predecessor only when the lessee or purchaser uses that property "for the continuance of the same business." That is, under that clause, more than merely following in another's place is required. We think it likely that the legislature likewise intended to use the word "successor" in the first clause to mean more than one that merely follows another.

Blachana further argues, however, that, to be a "successor" for the purposes of ORS 652.310(1), an entity that succeeds another must do so in circumstances in which the succeeding entity would be liable for the promises or obligations of its predecessor under law other than the wage statute. Yet the dictionary definitions of the term "successor" do not import that requirement. And, notably, ORS 652.310(1) does not define the word "employer" to include those who succeed to the *obligations* of a prior employer; rather, the definition includes those who succeed to the "*business*" of the prior employer.

At the time that the legislature enacted ORS 652.310(1), "business" was defined as "a commercial or industrial establishment or enterprise; he sold his *business*." *Webster's* at 296-97 (emphasis in original). By defining an "employer" to mean a successor to the "business" of a predecessor, the legislature indicated an intent to include a broad

class of successors—all those who continue to operate the same establishment or engage in the same enterprise. It follows that, to succeed to the "business" of a predecessor, an entity need not, necessarily, be liable for the obligations of the predecessor. As the parties recognize, the common law as it existed in 1931 did not impose liability for a predecessor's debts on all successors. The general rule is described in William Meade Fletcher, VII *Cyclopedia of the Law of Private Corporations* § 4751, 8388-91 (1919) as follows:

> "The general rule, which is well settled, is that where one company sells or otherwise transfers all its assets to another company, the latter is not liable for the debts and liabilities of the [transferor]. Stating the rule more fully, it is generally held that a separate and distinct corporation, which has succeeded, by a valid purchase and transfer, to the property and franchises of another corporation, is not liable, merely by reason of its succession, for the general debts or on the general contracts of the other corporations. It is not liable at all for such debts or on such contracts, in the absence of a special agreement to pay or assume the same, nor is the property in its hands liable to be subjected to the same, in the absence of a valid lien thereon, unless it affirmatively appears that the transfer of the property and franchises of the other corporation constitutes, in fact or in law, a fraud upon its creditors, or the circumstance attending the creation of the new corporation, and its succession to the property and franchises of the old corporation, are such as to warrant a finding that it is in reality a mere continuation of the old corporation."

> There are four important exceptions to this rule as follows, *viz*.:

> "1.   The transfer or sale must not constitute a statutory consolidation or merger. If it does, then the liability exists.

> "2.   There must be no agreement to assume such liabilities, either express or implied.

> "3.   The transaction must not be such as to warrant a finding that the purchasing corporation was a mere continuation of the selling corporation.

> "4.   The transaction must not be fraudulent in fact ***."

(Footnotes omitted.) Thus, under the common law, where one company transferred all its assets to another company, the successor to the business generally was not responsible for the liabilities of the predecessor.[9] We presume that the legislature was aware of existing law, including the general rule that some successors would be liable for debts of their predecessors and some would not. *See State v. Stark*, 354 Or 1, 10, 307 P3d 418 (2013) (court presumes Oregon legislature aware of existing law). The legislature enacted the statutory precursor to ORS 652.310(1) as part of an act "[t]o more fully provide for the payment and collection of wages and the enforcement of the rights of employees in such matters," Or Laws 1931, ch 287, and did not explicitly limit the businesses liable for wage claims to only one class of successors—those that, even in the absence of the statute, would be liable for the debts of a predecessor under the common law. Consequently, we cannot infer, solely from the use of the phrase "successor to the business," an intent to limit the term "employer" to those succeeding entities that would be liable for the debts of a predecessor under the common law.

The Court of Appeals found the intent to impose that limitation not in that phrase, but by looking to the second clause in the definition of employer in ORS 652.310(1)— "or any lessee or purchaser of any employer's business property for the continuance of the same business." The court examined that clause in the context of the first clause of that definition—"successor to the business" of any employer. *Blachana*, 250 Or App at 87-88. As noted, the court stated that a plausible interpretation giving meaning to both clauses is that

> "the legislature intended to impose liability in the first clause on a party that succeeds to the rights and liabilities of the predecessor as a matter of law and, in the second clause, defined an additional circumstance—when a party purchases or leases the employer's business property to continue the same business—in which a party that would

---

[9] In *Erickson v. Grande Ronde Lbr. Co.*, 162 Or 556, 568, 92 P2d 170 (1939), decided not long after the legislature enacted ORS 652.310(1), this court summarized and explained, in generally the same terms, the common law rule that we have quoted in the text.

not be liable as a 'legal successor' could still be culpable for a wage claim."

*Id.* at 88. According to the court, if it were to interpret the first clause to mean a business that merely followed a predecessor (in the court's words, a "functional" successor), then the two clauses would be duplicative insofar as, in that case, both clauses would refer to businesses that, in the court's view, would not otherwise be liable to pay wages owed by a prior employer. *Id.*

We interpret the statute differently. As we have explained, to be a "successor to the business" under ORS 652.310(1), an entity must do more than merely follow a predecessor chronologically; it must conduct a business that is of like part or character to the predecessor's business. Thus, the first clause of the definition of "employer" requires a successor to conduct a business of like part or character to the predecessor's. The second clause requires a lease or purchase "for the continuance of the same business." It follows that neither the first nor the second clause refers to or imposes liability on an entity merely because it follows a predecessor. Rather, both clauses require the successor entity to conduct a business similar to that of the predecessor, or, as BOLI has interpreted the statute, to "conduct essentially the same business as conducted by the predecessor." *Anita's Flowers*, 6 BOLI at 267-68.

We recognize that interpreting the first clause—"successor to the business"—to mean an entity that "conducts essentially the same business as conducted by the predecessor" could be seen to render the second clause—"or any lessee or purchaser of an employer's business property for the continuance of the same business"—redundant. That is, a lessee or purchaser that acquired a predecessor's business property for the continuance of the same business necessarily would "conduct essentially the same business" as the predecessor and would, therefore, fall within that definition of "successor to the business." That redundancy, of course, is a consequence that this court must avoid if possible. *See* ORS 174.010 (where statute contains several provisions, courts should, if possible, construe statute so as to give effect to all).

There is, however, at least one interpretation of the two clauses that would give meaning to both. The legislature may have intended to include within the scope of the phrase "successor to the business" entities that operate essentially the same business as a predecessor, but do so without entering into a formal agreement, such as a lease or purchase, to acquire the business property of the predecessor. For example, such an entity might, as Blanchana did, obtain the business property of the predecessor by repossession, or it might obtain the predecessor's stock or legal interest in the business rather than the business property *per se*. Although a broad interpretation of the first clause necessarily would encompass the circumstance expressed in the second, the legislature could have considered it appropriate to identify that circumstance specifically. The legislature could have reasoned that a lessee or purchaser of business assets might not be considered a successor to the preceding entity, and it may have intended to ensure that such a lessee or purchaser be liable for wages that the preceding entity failed to pay, as long as the entity acquiring the assets did so for the continuation of the prior business.

Given that the proper interpretation of the second clause is not at issue in this case, however, we need not definitively discern the legislature's intent in wording the second clause in the way that it did. Rather, it is sufficient for us to conclude that the legislature intended, in the first clause, to include within the definition of those "employers" liable for wage claims those "successors to the business" that conduct essentially the same business as conducted by the predecessor.

In so reasoning, we think it significant that, before the legislature enacted the statutory predecessor to ORS 652.310(1) in 1931, employees who had not been paid by their direct employers could collect unpaid wages only by judicial action and only against those employers or entities that would have been liable for those wages under the common law. *See*, *e.g.*, *Cummings v. Central Oregon Bank*, 110 Or 101, 223 P 236 (1924) (action by employee against employer to recover unpaid wages); *Olson v. Heisen*, 90 Or 176, 175 P 859 (1918) (same). When it enacted the statute now codified

at ORS 652.310(1), the legislature came to the aid of such employees. As we explained above, the legislature authorized the commissioner of the bureau of labor to sue employers to recover unpaid wages on behalf of wage claimants, and it authorized the commissioner to bring those claims not only against the workers' direct employers, but also against a broader class of entities. Or Laws 1931, ch 287, §§ 1, 6. And the legislature expressly stated that the remedy that it provided was in addition to all other remedies. *See id.*, § 7 ("The remedies provided by this act shall be additional to and not in substitution for and in no manner impair other remedies now or hereafter existing or provided, and may be enforced simultaneously or consecutively so far as not inconsistent with each other."); ORS 652.380 (to same effect). It is possible that the legislature intended to expand an employee's remedies only by providing them with assistance in enforcement and, for purposes of the first clause of the statute, to limit those remedies to claims against those entities that would have been subject to liability without the enactment of ORS 652.310(1). But the legislature did not use words that clearly imposed such a limitation, and, given that the legislature specified that its purpose was "[t]o more fully provide for the payment and collection of wages and the enforcement of the rights of employees," Or Laws 1931, ch 287, we do not infer a limitation that the words of the statute do not require.[10]

As we have explained, BOLI has interpreted ORS 652.310(1) to include successors that conduct "essentially the same business as conducted by the predecessor." For the reasons stated, we conclude that BOLI's interpretation is consistent with the legislature's intent.

We turn, now, to consider whether BOLI correctly applied its interpretation of ORS 652.310(1) to the facts of this case. As this court stated in *Springfield Education Assn.*,

---

[10] Blachana contends that the purpose of ORS 652.414(3) is not to ensure that employees are paid for their work, but to ensure that the government recoups benefits that it has paid from the Wage Security Fund. In this case, BOLI is seeking such recoupment. However, the Wage Security Fund did not exist in 1931, and, at the time that the legislature enacted the statute for the enforcement of wage claims, now codified at ORS 652.310 *et seq.*, the legislature sought to benefit employees, not the state government.

> "[w]hen applying [inexact] terms to specific facts, whether by order or by rule, the task of the agency, and ultimately of the court, is to determine whether the legislature intended the compass of the words to include those facts. The determination of the meaning of a statute is one of law, ultimately for the court."

290 Or at 224. As we have discussed, BOLI considers the following factors in determining whether a corporation conducts essentially the same business as a predecessor: the name and identity of the business, its location, the lapse of time between the previous operation and the new operation, whether the businesses employed substantially the same workforce, whether the same product was manufactured or the same services offered, and whether the same machinery, equipment, or methods of production were used.

Blachana has not articulated any specific criticism of those factors and all are logically relevant to a determination of whether a successor operates "essentially the same business" as a predecessor. Other factors also may be logically relevant to that determination; as BOLI has stated, the listed factors are not exclusive. Nothing in the record suggests that BOLI did not give due consideration to any other factor that Blachana considered applicable. BOLI has been interpreting the statutory phrase "successor to the business," ORS 652.310(1), and using the same factors to determine whether an entity is a successor since 1987; we conclude that its consideration of those factors was appropriate in this case.

In applying its interpretation of ORS 652.310(1) to the facts of this case, BOLI considered those factors and concluded that all but one of the factors indicated that, in its first year of business, Blachana conducted essentially the same business as had NW Sportsbar. In reaching that conclusion, BOLI relied on the similarity in the name and identity of the business under Blachana's and NW Sportsbar's ownership; the fact that the businesses were located in the same premises; that only 47 days elapsed from the date NW Sportsbar closed its doors until Blachana reopened for business; that both businesses offered food, alcoholic drinks, and music in a club atmosphere; and that Blachana used much of the same equipment in running its business that NW Sportsbar

surrendered to it when it closed. BOLI acknowledged that Blachana employed a different work force to operate its business, but, taking the circumstances as a whole, it concluded that Blachana was a "successor to the business" that had been operated by NW Sportsbar.

We conclude that BOLI did not err in reaching that conclusion. Although the employment of a different work force may indicate that a successor is not conducting essentially the same business as a predecessor, other facts may militate in favor of the opposite conclusion, as they did in this case. The legislature intended to make a successor that conducts essentially the same business as its predecessor liable for wages owed to employees of the predecessor, and BOLI did not err in concluding that Blachana was such a successor. Therefore, Blachana must reimburse BOLI for wages paid from the Wage Security Fund on behalf of NW Sportsbar's four wage claimants under ORS 652.414(3) and ORS 652.310(1).

The decision of the Court of Appeals is reversed. The final order of the Bureau of Labor and Industries is affirmed.