840 September 14, 2017 No. 48

IN THE SUPREME COURT OF THE
STATE OF OREGON

STATE OF OREGON,
*Respondent on Review,*

*v.*

MATTHEW EUGENE RICHARDS,
*Petitioner on Review.*

(CC 120833582; CA A155895; SC S063979)

On review from the Court of Appeals.*

Argued and submitted November 14, 2016.

Kyle Krohn, Deputy Public Defender, Salem, argued the cause and filed the briefs for petitioner on review. Also on the brief was Ernest G. Lannet, Chief Defender.

Shannon T. Reel, Assistant Attorney General, Salem, argued the cause and filed the brief for respondent on review. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Balmer, Chief Justice, and Kistler, Walters, Landau, Brewer, Nakamoto, and Flynn, Justices.**

LANDAU, J.

The decision of the Court of Appeals is affirmed. The judgment of the circuit court is affirmed.

_____

* Appeal from Multnomah County Circuit Court, Angel Lopez, Judge. 277 Or App 128, 370 P3d 874 (2016)

** Baldwin, J. retired on March 31, 2017, and did not participate in the decision of this case. Duncan, J., did not participate in the consideration or decision of this case.

**LANDAU, J.**

When an individual has been convicted of a felony, the sentencing court may impose a term of imprisonment, followed by release on post-prison supervision that is subject to certain conditions. Or, the trial court may instead sentence the individual to a term of probation, also subject to conditions. An individual who has been convicted of more than one criminal offense may serve probation for one offense and post-prison supervision for another at the same time. And when that individual violates a condition of one form of release, the same conduct may violate a condition of the other form of release as well. That is to say, when an individual has been released on both probation and post-prison supervision subject to the same or similar conditions, a single act may violate the conditions of both probation and post-prison supervision.

This is such a case. Defendant was sentenced on two different criminal offenses and was subject to both probation and post-prison supervision at the same time. A condition of both was that he not change addresses without permission. He did not comply with that condition. As a result, the official who supervised his post-prison supervision on one offense imposed a sanction of three days in jail. The trial court imposed an additional sanction of revoking his probation on the other offense and sentenced him to a term of imprisonment on that offense. The issue in this case is whether the trial court had authority to do so. The Court of Appeals concluded that the trial court does have such authority. *State v. Richards*, 277 Or App 128, 130, 370 P3d 874 (2016). For the reasons that follow, we agree and affirm.

## I.   FACTUAL BACKGROUND

The relevant facts are not in dispute. Defendant pleaded guilty to one count of first-degree burglary and one count of first-degree theft. On the burglary conviction, the trial court imposed a sentence of 36 months' supervised probation. On the theft conviction, the trial court also imposed a sentence of 36 months' probation. The sentences ran concurrently. Both were subject to general conditions of probation, including that defendant report to his supervising officer as directed and that he not change residences without

permission. The judgment specified that the trial court itself would supervise defendant's probation.

Four months later, defendant changed his residence without permission. The court revoked defendant's sentence of probation on the theft conviction and imposed a jail sentence, followed by 12 months of post-prison supervision. Conditions of the post-prison supervision included that defendant not change addresses without permission from his supervising officer and that he report on request. The trial court did not revoke the sentence of probation on the burglary conviction. After completing the jail sentence, defendant was on both probation (for the burglary conviction) and post-prison supervision (for the theft conviction). A Deschutes County Probation and Parole Officer was assigned to supervise defendant for both probation and post-prison supervision.

Shortly after being released, defendant again violated his conditions of release in changing his address without permission. The county officer obtained a warrant for defendant's arrest. Defendant failed to respond. Several months later, defendant voluntarily surrendered to the county officer and consented to the imposition of a three-day jail sanction for his violation of the conditions of post-prison supervision.

When the trial court learned of the violation, it held a probation violation hearing to decide whether the court should revoke defendant's sentence of probation on the burglary conviction. At the hearing, defendant conceded that he had violated a condition of his probation, but he argued that the trial court could not revoke probation because, by that time, he had already served the three-day term of incarceration that his supervising officer had imposed for the violation of the terms of his post-prison supervision. Specifically, defendant argued that ORS 137.593(3) deprived the court of authority to revoke his probation. That statute provides:

> "In no case may the sentencing judge cause a probationer to be brought before the court for a hearing and revoke probation or impose other or additional sanctions after the probationer has completed a structured, intermediate sanction imposed by the Department of Corrections

agency or a county community corrections agency pursuant
to rules adopted under ORS 137.595."

According to defendant, the Department of Corrections had
adopted administrative rules setting out structured, inter-
mediate sanctions—that is, administrative sanctions short
of revocation—for violations of conditions of both probation
and post-prison supervision. Thus, defendant argued, when
an individual completes a structured, intermediate sanction
for *either* probation or post-prison supervision violations,
that individual has completed a structured, intermediate
sanction within the meaning of ORS 137.593(3). In this
case, defendant argued, he had done just that: The county
officer was designated as the "county community correc-
tions agency" within the meaning of the statute. That offi-
cer imposed the structured, intermediate sanction of three
days in jail as a sanction for violating the conditions of his
post-prison supervision. And he did so in accordance with
administrative rules adopted pursuant to ORS 137.595.
Consequently, defendant concluded, ORS 137.593(3) pre-
cluded the trial court from imposing any additional sanction
for the same violation.

The state responded that, by its terms, ORS
137.593(3) prohibits a trial court from imposing additional
sanctions for a probation violation when a "probationer" has
already been sanctioned under the rules for violation of his
conditions of "probation." Nothing in the statute, the state
argued, says anything about limiting the authority of the
court to impose sanctions for probation violations when a
defendant has already been sanctioned for violations of post-
prison supervision.

The trial court agreed with the state and revoked
defendant's probation on the burglary conviction. It imposed
a 17-month term of imprisonment, followed by 36 months of
post-prison supervision.

Defendant appealed, reprising his argument that
ORS 137.593(3) prohibited the trial court from imposing a
sanction for the probation violation because he had already
completed the sanction for his post-prison supervision vio-
lation. The Court of Appeals rejected defendant's reliance
on that statute as a limitation on the trial court's authority

to impose sanctions for a probation violation on an individual who already has completed a sanction for a post-prison supervision violation. The court explained that the text of ORS 137.593(3) makes it clear that the statute applies only to "probationers" who have already completed an administrative sanction for a probation violation, not for a post-prison supervision violation. 277 Or App at 130-31.

## II.   ANALYSIS

On review, defendant argues that the Court of Appeals erred in concluding that ORS 137.593(3) does not constrain the trial court in this case. He contends that the statute clearly evinces an intention to delegate to the Department of Corrections the authority to adopt administrative rules concerning probation violation sanctions and, in so doing, intends those rules "to circumscribe a trial court's traditional authority over probationers." Defendant notes that the Department of Corrections did adopt such rules and that those rules treat probation and post-prison supervision as "coextensive." It necessarily follows, he reasons, that an offender who has completed sanctions for *either* a probation or post-prison supervision violation has completed sanctions "pursuant to rules," as provided in ORS 137.593(3). Defendant thus concludes that the statute precluded the trial court from revoking probation or imposing additional sanctions.

In response, the state asserts that the plain wording of ORS 137.593(3) makes clear that it applies only to probationers who already have completed sanctions for probation violations, not to those who have completed sanctions for violations of other forms of supervised release.

We begin with an overview of the statutory and regulatory framework that applies to the imposition of sanctions for probation and post-prison supervision violations. As we noted at the outset of this opinion, a sentencing court may impose a sentence of incarceration, to be followed by release on post-prison supervision. In some circumstances, the Board of Parole and Post-Prison Supervision has exclusive authority over the imposition of sanctions for such violations: for example, if the term of imprisonment is for more than 12 months, or the offense is

a felony with a specified crime category under the sentencing guidelines, or the offense is a Measure 11 offense. ORS 144.101(1). In those circumstances in which the board does not have exclusive authority—for example, if the term of imprisonment is for 12 months or less—the local supervisory authority has jurisdiction over imposition of sanctions for violations of the terms of post-prison supervision. ORS 144.101(2).

The legislature authorized the board to adopt administrative rules to carry out its responsibilities. ORS 144.140. And the board has adopted extensive administrative rules, including those concerning the imposition of sanctions for violation of post-prison supervision conditions. *See generally* OAR 255-075-0067. Among other things, those rules provide that administrative sanctions are to be imposed in accordance with Department of Corrections rules for structured, intermediate sanctions. OAR 255-075-0067(5).

Additionally, a court may impose a sentence of probation, ORS 137.010, also subject to conditions, ORS 137.540(1). The court itself may elect to supervise a defendant's probation, or it may order that the Department of Corrections or a county community corrections agency supervise the probation. ORS 137.540; ORS 137.593(1).

The legislature charged the Department of Corrections with adopting rules to specify particular sanctions for violating probation conditions. ORS 137.595(1). Those rules are required to establish:

"(a)  A system of structured, intermediate probation violation sanctions that may be imposed *** on a probationer who waives in writing a probation violation hearing, admits or affirmatively chooses not to contest the violations alleged in a probation violation report and consents to the sanctions;

"(b)  Procedures to provide a probationer with written notice of the probationer's right to a hearing before the court to determine whether the probationer violated the conditions of probation alleged in a probation violation report, and if so, whether to continue the probationer on probation subject to the same or modified conditions, or order sanctions for any violations ***;

"(c)   Procedures for a probationer to waive in writing a probation violation hearing, admit or not contest the violations alleged in the probation violation report and consent to the imposition of structured, intermediate sanctions by the Department of Corrections or a county community corrections agency;

"(d)   The level and type of sanctions that may be imposed by parole and probation officers and by supervisory personnel;

"(e)   The level and type of violation behavior warranting a recommendation to the court that probation be revoked;

"(f)   Procedures for notifying district attorneys and the courts of probation violations by probationers * * *."

ORS 137.595(2).

Those rules then govern the sanctions imposed by the department or by a county community corrections agency for probation violations, if the sentencing court has assigned those agencies the responsibility of supervising probation. ORS 137.593(1). The court retains authority to revoke probation. ORS 137.593(2)(a). But the court's authority is limited. That is where ORS 137.593(3) comes into play. It provides that, if the Department of Corrections or a county community corrections agency imposed an administrative sanction in accordance with the department's rules, and the probationer has completed that sanction, the trial court is precluded from revoking probation or imposing any additional sanction.

The Department of Corrections adopted administrative rules that establish a system of structured, intermediate sanctions for probation violations. *See generally* OAR 291-058-0010 to 291-058-0070. Because, as we have noted above, rules of the Board of Parole and Post-Prison Supervision provide that the imposition of sanctions for post-prison supervision violations must be in accordance with the sanctions for probation violations, the rules refer to post-prison supervision at several points. In particular, the department's rules include the Administrative Sanctions Sanctioning Grid that spells out sanctions that apply to either probation violations or to post-prison supervision violations. OAR 291-058-0045,

Attachment A. In other respects, the rules distinguish between probation and post-prison supervision. For example, the rules set out different notice requirements that apply to probation and post-prison supervision cases. OAR 291-058-0040(2).

The department's administrative rules also streamline the process by which sanctions are imposed. They provide that, once administrative sanctions are imposed, notice should be provided to the district attorney and the sentencing court. OAR 291-058-0050(1). Within four days of the imposition of such administrative sanctions, the court may hold a probation violation hearing to determine whether to revoke probation or to impose additional sanctions for the probation violation. OAR 291-058-0050(3). But, in accordance with ORS 137.593(3), the rules go on to state that if the probationer already has completed the administrative sanctions by the time of that hearing, the court may not revoke probation or impose additional sanctions for that probation violation. *Id.*

With that background in mind, we turn to the parties' arguments. As we have noted, defendant argues that ORS 137.593(3) limits the trial court's authority to revoke probation when a defendant already has completed any type of administrative sanction—whether for a probation violation or for a post-prison supervision violation.

Defendant's argument cannot be squared with the wording of the statute on which he relies. By its terms, ORS 137.593(3) provides that a trial court cannot "revoke probation" when a "probationer" has completed structured, intermediate sanctions imposed pursuant to Department of Corrections rules adopted "under ORS 137.595." ORS 137.595, in turn, authorizes the department to adopt rules to establish a system of "probation violation sanctions" that may be imposed on a "probationer" who has "violated conditions of probation." Thus, the statute on which defendant relies limits a sentencing court's authority only when a probationer has completed sanctions for violating *probation*. There is simply nothing in the wording of ORS 137.593(3) that suggests that a sentencing court may not revoke probation when an individual has completed sanctions for something other than a probation violation.

Defendant insists that ORS 137.593(3) must not be read in isolation and must instead be read in conjunction with the Department of Corrections administrative rules, to which he asserts we must afford deference under *Springfield Educ. Assn. v. Sch. Dist.*, 290 Or 217, 228, 621 P2d 547 (1980). As we understand it, defendant argues that *Springfield* requires courts to defer to an agency's interpretation of statutes that the legislature "deliberately l[eft] incomplete." That is so in this case, he says, because the legislature expressly delegated authority to the Department of Corrections to adopt administrative rules establishing a system of administrative sanctions. The department did just that, he observes, and the rules that it adopted apply not just to probation violations but also to post-prison supervision violations. From that, defendant concludes that it is apparent that the department intended that an individual's completion of *any* structured, intermediate sanctions would have the effect of precluding a trial court from revoking probation or imposing additional sanctions. And, under *Springfield*, he says that we should defer to the department in that regard.

There are a number of flaws in the foregoing argument. To begin with, it misapplies *Springfield*. Under *Springfield*, the courts may be required to defer to an administrative agency's construction of a statute, depending on the category of statutory word or phrase at issue. 290 Or at 223. If a word or phrase is "delegative" in nature—that is, if it "express[es] incomplete legislative meaning that the agency is authorized to complete"—courts will defer to an agency's interpretation of it as long as it is "within the range of discretion allowed by the more general policy of the statute." *Coast Sec. Mortg. Corp. v. Real Estate Agency*, 331 Or 348, 354, 15 P3d 29 (2000). In this case, defendant identifies no word or phrase that is delegative in nature.

At oral argument, defendant retreated somewhat from his reliance on *Springfield*, explaining that he meant that the department's regulations—which apply to sanctions for both probation violations and post-prison supervision violations—provide essential context for a proper understanding of the scope of authority that the legislature delegated under the ostensibly narrower ORS 137.595, which

refers only to rules concerning probation violations. The problem with that fall-back argument is, however, that it characterizes the law precisely backwards. Administrative rules that did not exist at the time of the enactment of a statute do not inform the scope of authority granted by the statute. Rather, the statutes inform the validity of the rules themselves. If the rules exceed the authority granted by the statute, they are invalid. *Planned Parenthood Assn. v. Dept. of Human Res.*, 297 Or 562, 564, 687 P2d 785 (1984).

Aside from that, defendant's argument relies on a misreading of the rules themselves. The rules do not treat probation violations and post-prison supervision violations as "coextensive." They simply provide that a set of sanctions applies to both. As we have noted, ORS 137.595 authorizes the department to adopt rules to establish a system of "probation violation sanctions," that may be imposed on a "probationer" who has "violated conditions of probation." At the same time, the Board of Parole and Post-Prison Supervision adopted rules concerning post-prison supervision violations providing that the sanctions for such violations will be in accordance with the sanctions that are reflected in the department's rules regarding sanctions for probation violations. Accordingly, the department's rules incorporate the Administrative Sanctions Sanctioning Grid, which applies to both probation violations and to post-prison supervision violations. That a single set of sanctions spelled out in the department's administrative rules applies both to probation violations and to post-prison supervision violations does not mean that the two types of violations are, in effect, the same things, any more than the fact that the Oregon Vehicle Code may apply equally to cars and trucks means that cars and trucks are the same things. And, in fact, the department's rules otherwise make clear the distinctions between probation violations and post-prison supervision violations.

Defendant argues that the legislative history of ORS 137.593 and ORS 137.595 demonstrates that the Oregon legislature intended those statutes to confer on the Department of Corrections broad power "to limit judicial authority" and "adopt a unified policy for all administrative sanctions," not just sanctions for probation violations. That argument, too, fails.

To begin with, whatever may be said of the legislative history in that regard, the fact remains that ORS 137.595 authorizes the department to adopt administrative rules to establish a system of "probation violation sanctions," that may be imposed on a "probationer" who has "violated conditions of probation." The statute says nothing about establishing "unified policy for all administrative sanctions," as defendant suggests. As this court has explained on many occasions, "legislative history cannot substitute for, or contradict the text of, [a] statute." *White v. Jubitz Corp.*, 347 Or 212, 223P3d 566 (2009); *see also State v. Gaines*, 346 Or 160, 173, 206 P3d 1042 (2009) ("When the text of a statute is truly capable of having only one meaning, no weight can be given to legislative history that suggests—or even confirms—that legislators intended something different.").

What is more, defendant has not identified any legislative history that supports the broad proposition that he asserts. In fact, defendant concedes that "[i]t does not appear that the legislature anticipated the scenario presented in this case." He argues nevertheless that the legislative history shows the legislature was "well aware" that administrative sanctions already existed for forms of supervision other than just probation and that it was interested in streamlining the processes that apply to the imposition of sanctions for all types of violations of supervision conditions.

The legislative history does indeed show that the legislature was aware of different types of supervision, and it further suggests that the legislature was interested in consolidating administrative proceedings for violations of supervision conditions. The text of what are now ORS 137.593 and ORS 137.595 was introduced in the 1993 legislative session at the request of the Criminal Justice Council as Senate Bill 138. Testifying about the proposed law on behalf of the council, Multnomah County Circuit Court Judge James Ellis offered an example of one problem the bill was designed to address:

> "One more thing we tried to respond to, just as an example of things this bill will improve, we now have people who may be on parole for a pre-guidelines case, post-prison supervision for a guidelines case they've been to prison on, and probation in multiple counties.

"The last day we met to work on this, I had had a hearing the day before for someone who is in all those categories, and on probation in three different cases in Multnomah County alone. I did the probation hearing for my own case and one other judge * * * . Then the person had to be taken to [Clackamas] County to have a hearing there, * * * and finally they had already had a parole violation hearing.

"We contemplate that we could have one hearing to take care of all of that. The bill provides that, even between counties, you'll just have one violation proceeding."

Tape Recording, Senate Judiciary Committee, SB 138, Feb 3, 1993, Tape 15, Side B (statement of Judge Ellis). Judge Ellis also noted that there then existed three different lists of conditions applied to individuals on probation, parole, or post-prison supervision, and explained that "[t]his bill tries to get that straightened out. So we'll have one list of standard conditions that'll apply to * * * all three categories that one person may be in." *Id.*

     But nothing in that legislative history contradicts our reading of the relevant statutes or the Department of Corrections administrative rules. It certainly does not suggest that the legislature intended that any such rules could limit the authority of the sentencing court to impose sanctions for probation violations beyond what is stated in the text of what is now ORS 137.593(3). To the contrary, our reading of that statute and the department's rules is entirely consistent with the concerns that Judge Ellis expressed. As we have observed, those rules provide for sanctions that apply not just to probation violations, but to other types of violations as well. In addition, the rules call for notification of the district attorney and the trial court as to the imposition of administrative sanctions and authorize a hearing on whether to revoke probation or impose additional sanctions, thus streamlining the process by which sanctions are imposed.

     We conclude that ORS 137.593(3) prohibits a sentencing court from revoking probation or imposing additional sanctions for a probation violation only when the probationer already has completed structured, intermediate sanctions for that probation violation. It does not preclude the court

from revoking probation when an individual already has completed structured, intermediate sanctions for some other violation.

In this case, defendant already had completed a three-day jail term that had been imposed for his violation of conditions of post-prison supervision. He had not completed any structured, intermediate sanctions for his violation of probation. Accordingly, ORS 137.593(3) did not preclude the court from revoking his probation.

The decision of the Court of Appeals is affirmed. The judgment of the circuit court is affirmed.