GARRETT, J.
*43 Petitioner, who owns a parcel of land zoned for exclusive farm use (EFU) in Lane County, received county approval under a 2013 statute to build three replacement dwellings on the property. Respondent LandWatch Lane County (LandWatch) appealed that decision to the Land Use Board of Appeals (LUBA), which reversed the county. On judicial review, petitioner argues that LUBA's order is unlawful in substance because it misconstrues the requirements of Oregon Laws 2013, chapter 462, section 2. We agree, and we therefore reverse and remand LUBA's order.
We take the relevant facts from LUBA's opinion. In 2016, petitioner applied for permits to replace three dwellings previously located on her property that had been demolished in 1997. A county planning director approved the applications. In response to LandWatch's challenge, Lane County conducted further proceedings, which resulted in the applications being approved by a county hearings official and ultimately by the county's board of commissioners. LandWatch appealed that decision to LUBA.
At issue before LUBA was the meaning of House Bill (HB) 2746 (2013) (the 2013 Act), through which the legislature amended the requirements for replacement dwellings in EFU-zoned land. Section 2 of the 2013 Act provides, in part:
"(1) A lawfully established dwelling may be altered, restored or replaced under ORS 215.213(1)(q) or 215.283 (1)(p) in the manner provided by either subsection (2) or (3) of this section.
"(2) The dwelling may be altered, restored or replaced if, when an application for a permit is submitted, the permitting authority:
"* * * * *
*39 "(b) Finds that the dwelling was assessed as a dwelling for purposes of ad valorem taxation for the lesser of:
"(A) The previous five property tax years unless the value of the dwelling was eliminated as a result of the destruction, or demolition in the case of restoration, of the dwelling; or *44 "(B) From the time when the dwelling was erected upon or affixed to the land and became subject to assessment as described in ORS 307.010 unless the value of the dwelling was eliminated as a result of the destruction, or demolition in the case of restoration, of the dwelling."
Or. Laws 2013, ch. 462, § 2. The Land Conservation and Development Commission (LCDC) later amended OAR 660-033-0130 to implement the 2013 Act. OAR 660-033-0130 provides, in relevant part:
"(8)(a) A lawfully established dwelling may be altered, restored or replaced under ORS 215.213(1)(q) or 215.283 (1)(p) if, when an application for a permit is submitted, the permitting authority finds to its satisfaction, based on substantial evidence that:
"* * * * *
"(B) The dwelling was assessed as a dwelling for purposes of ad valorem taxation for the previous five property tax years, or, if the dwelling has existed for less than five years, from that time.
"(C) Notwithstanding paragraph (B), if the value of the dwelling was eliminated as a result of either of the following circumstances, the dwelling was assessed as a dwelling until such time as the value of the dwelling was eliminated:
"(i) The destruction (i.e. , by fire or natural hazard), or demolition in the case of restoration, of the dwelling[.]"
Before LUBA, LandWatch argued that the county hearings official had erroneously concluded that petitioner's applications satisfy the requirements of the 2013 Act and OAR 660-033-0130. The hearings official had determined that the applications satisfied the applicable requirements because the subject dwellings had been assessed for tax purposes from the time they were built until they were demolished and removed from the tax rolls in 1997. According to LandWatch, the 2013 Act is more restrictive; specifically, LandWatch contended that the 2013 Act requires a former dwelling to have been assessed as a dwelling within the five years immediately preceding the permit application.
*45 LUBA agreed with LandWatch, concluding that subparagraphs 2(2)(b)(A) and (B) of the 2013 Act "work together to specify the default, and longest, assessment look-back possible-five years." LUBA further concluded that OAR 660-033-0130"eliminates the duplication in the statute and achieves the same limitation [that] the statute achieves" but that the rule "does not eliminate the statutory requirement to impose a look-back period of five years." Based on its construction of the 2013 Act's requirements, LUBA concluded that, because petitioner's dwellings had not been assessed as dwellings in the five years preceding her application, the county could not issue permits for their replacement under ORS 215.213(1)(q) and section 2(2)(b) of the 2013 Act. Accordingly, LUBA reversed the county's approval decision.
Petitioner seeks review of LUBA's final order, arguing that LUBA incorrectly construed the 2013 Act and OAR 660-033-0130. Petitioner argues that, contrary to LUBA's construction, the five-year time limit in the 2013 Act does not apply to dwellings that were destroyed or demolished. Petitioner further argues that OAR 660-033-0130 reflects that construction of the statute. To that end, petitioner argues that LUBA misread the text of the rule, which provides that, "[n]otwithstanding" the five-year taxation requirement stated in OAR 660-033-0130(8)(a)(B), "if the value of the dwelling was eliminated as a result of *** (i) [t]he destruction (i.e. , by fire or natural hazard), or demolition in the case of restoration, of the dwelling," then the dwelling need only have been assessed as a dwelling "until such time as the value of the dwelling was eliminated." OAR 660-033-0130(8)(a)(C).
We review LUBA's order to determine whether it is "unlawful in substance," ORS 197.850(9)(a), and we do not substitute LUBA's judgment with our own with respect *40 to any factual issue, ORS 197.850(8). We review LUBA's construction of statutes for legal error. Bowerman v. Lane County , 287 Or. App. 383, 392, 403 P.3d 512 (2017). Because LUBA's order turned on its conclusion that (1) issuance of the permits was inconsistent with the statute's five-year "look-back" requirement and that (2) LCDC's rule was not *46 inconsistent with that requirement, our review turns in large part on whether LUBA correctly construed the 2013 Act.
As a preliminary matter, petitioner asserts that LCDC's interpretation of a statute as embodied in OAR 660-033-0130 is "presumptively valid" based on the agency's land-use expertise, arguing that we must defer to LCDC's construction under Springfield Education Association v. Springfield School District , 290 Or. 217, 621 P.2d 547 (1980) ( Springfield ). In Springfield , the Supreme Court set forth the respective roles of courts and administrative agencies in construing statutes, delineating three categories of statutory terms-exact, inexact, and delegative. Id . at 223-30, 621 P.2d 547. "Both exact terms and inexact terms are complete expressions of legislative policy," Coffey v. Board of Geologist Examiners , 348 Or. 494, 508, 235 P.3d 678 (2010), and an agency's construction of either exact or inexact terms, i.e. , nondelegative terms, "is not entitled to deference on review," Blachana, LLC v. Bureau of Labor and Industries , 354 Or. 676, 687, 318 P.3d 735 (2014). "Delegative terms," by contrast, are those indicating that the legislature intended to delegate policy-making to the agency charged with implementing the statute, "such as the term 'good cause,' an open-ended phrase that necessitates further administrative agency policymaking." DCBS v. Muliro , 359 Or. 736, 745, 380 P.3d 270 (2016). If a statutory term is delegative, we will defer to an implementing agency's interpretation "as long as it is within the range of discretion allowed by the more general policy of the statute." State v. Richards , 361 Or. 840, 849, 401 P.3d 767 (2017) (internal quotation marks omitted).
To the extent that petitioner contends that the relevant statutory text here is delegative, we disagree. Unlike delegative terms, which "call[ ] for completing a value judgment that the legislature itself has only indicated," Springfield , 290 Or. at 228, 621 P.2d 547 (internal quotation marks omitted), the disputed replacement-dwelling requirements express a complete legislative policy, though not with such precision as to eliminate the need for statutory construction. The 2013 Act sets forth specific requirements for the issuance of a replacement-dwelling permit; the applicable *47 requirements depend on circumstances such as whether the former dwelling has been taxed as a dwelling for the previous five years, whether the former dwelling was constructed less than five years before the permit application, whether the dwelling was destroyed or demolished, and whether the dwelling was improperly removed from the tax rolls by a party other than the applicant. Although the interplay of those requirements requires some interpretation, there is no indication that the legislature intended to delegate to LCDC the authority to add to, subtract from, or alter the content of those requirements. Therefore, because the terms at issue are nondelegative, we reject petitioner's contention that we must defer to LCDC's construction of the 2013 Act, as expressed in OAR 660-033-0130. See Blachana, LLC , 354 Or. at 687, 318 P.3d 735 (an agency's interpretation of a nondelegative term "is not entitled to deference on review"). In that light, we turn to the merits of petitioner's arguments on review.
In construing statutes, we use the framework set forth in PGE v. Bureau of Labor and Industries , 317 Or. 606, 610-12, 859 P.2d 1143 (1993), as modified by State v. Gaines , 346 Or. 160, 171-73, 206 P.3d 1042 (2009). Our goal in construing a statute is to discern the meaning "most likely intended by the legislature that enacted it." Muliro , 359 Or. at 742, 380 P.3d 270. We first examine the statutory text in context, because " 'there is no more persuasive evidence of the intent of the legislature than the words by which the legislature undertook to give expression to its wishes.' " State v. Branch , 362 Or. 351, 356, 408 P.3d 1035 (2018) (quoting Gaines , 346 Or. at 171, 206 P.3d 1042 ). We also consider a statute's legislative history to the extent that it is helpful.
*41 Multnomah County Sheriff's Office v. Edwards , 361 Or. 761, 771, 399 P.3d 969 (2017).
The statutory text at the heart of the parties' dispute is the requirement that, in order to approve a replacement dwelling, the permitting authority must "[f]ind[ ] that the dwelling was assessed as a dwelling for purposes of ad valorem taxation for the lesser of ":
"(A) The previous five property tax years unless the value of the dwelling was eliminated as a result of the destruction, or demolition in the case of restoration, of the dwelling; or *48 "(B) From the time when the dwelling was erected upon or affixed to the land and became subject to assessment as described in ORS 307.010unless the value of the dwelling was eliminated as a result of the destruction, or demolition in the case of restoration, of the dwelling."
Or. Laws 2013, ch. 462, § 2(2)(b) (emphases added). According to petitioner, the quoted language expresses a general requirement that a building have been taxed as a dwelling for the lesser of two distinct time periods, but it exempts from that requirement buildings that were destroyed or demolished. LUBA, however, interpreted the language to mean that destroyed or demolished buildings are still subject to the general "lesser of" requirement. Under that construction, buildings that were destroyed or demolished more than five years before the application are ineligible for replacement.
The interpretive dispute turns in large part on the term "unless" in subparagraphs (A) and (B). We first consider that term's dictionary definition. See Muliro , 359 Or. at 745-46, 380 P.3d 270 ("We frequently consult dictionary definitions of * * * terms on the assumption that, if the legislature did not give the term a specialized definition, the dictionary definition reflects the meaning that the legislature would naturally have intended."). The term "unless," when used as a conjunction, is defined to mean "under any other circumstance than that," "except on the condition that," "without the accompanying circumstance or condition that," or "but that." Webster's Third New Int'l Dictionary 2503 (unabridged ed. 2002). With that ordinary meaning in mind, we understand the time periods in subparagraphs (A) and (B) to apply where a particular condition or circumstance is not present-namely, that "the value of the [former] dwelling was eliminated as a result of the destruction, or demolition in the case of restoration, of the dwelling." That construction tends to support petitioner's view that the "unless" phrases in both subparagraphs excuse a demolished former dwelling from the "lesser of" requirement altogether.
LUBA's construction, by contrast, would essentially replace the word "unless" with the word "until." According *49 to LUBA, all former dwellings must have been taxed as dwellings for one of the time periods set forth in either subparagraph (A) or subparagraph (B). Under that view, the timeframe referred to in subparagraph (A) would start five years before the permit application and run until such time as "the value of the dwelling was eliminated as a result of the destruction, or demolition in the case of restoration, or the dwelling." The timeframe referred in subparagraph (B) would run from the time the former dwelling was built until such time as "the value of the dwelling was eliminated as a result of the destruction, or demolition in the case of restoration, or the dwelling." Absent other evidence indicating that the legislature intended the word "unless" to mean "until" or "until such time as," we assume that the legislature intended the ordinary meaning of the words that it chose. See OR-OSHA v. CBI Services, Inc. , 356 Or. 577, 589, 341 P.3d 701 (2014) ("In the absence of evidence to the contrary, we assume that the legislature intended words of common usage to be given their ordinary meanings.").
In addition, the fact that the legislature used identical "unless" phrases in both subparagraphs (A) and (B) also supports petitioner's position that neither timeframe requirement applies to former dwellings that were demolished. "When the legislature uses the identical phrase in related statutory provisions that were enacted as * * * part of the same law, we [construe] the phrase to have the same meaning in both sections." Tharp v. PSRB , 338 Or. 413, 422, 110 P.3d 103 (2005). The legislature's use of identical *42 phrases in both subparagraphs indicates that the legislature intended both "unless" phrases to apply when the same condition is satisfied. That condition, as discussed above, exists when the former dwelling's value was eliminated as a result of "demolition in the case of restoration." Thus, it is logical to conclude that the legislature intended to excuse demolished dwellings from the taxation requirement altogether.[1] *50 The history of the 2013 Act further supports that construction of the statute. Prior to the enactment of HB 2746 (2013), ORS 215.213(q) (2011) allowed for the "[a]lteration, restoration or replacement of a lawfully established dwelling" in EFU land only if that building presently met the structural requirements for a habitable dwelling at the time of the permit application. The prior version of the statute also required that, "[i]n the case of replacement," the former dwelling must be one that "[i]s removed, demolished or converted to an allowable nonresidential use within three months of the completion of the replacement dwelling." ORS 215.213(q)(E)(i) (2011). Thus, the prior statute provided for the issuance of a replacement-dwelling permit only where the former dwelling was intact; furthermore, after such a permit was issued, the holder had a short window of time to remove the former dwelling. See Kohring v. Ballard , 355 Or. 297, 307-08, 325 P.3d 717 (2014) (considering the state of the law prior to the enactment of the statutory text in dispute).
The sponsors and supporters of HB 2746 stated that the purpose of the bill was to expand the availability of replacement-dwelling permits. Audio Recording, House Committee on Land Use, HB 2746, Feb. 21, 2013, at 2:45 (statement of Rep Ben Unger), https://olis.leg.state.or.us (accessed Mar 13, 2018) (explaining that the purpose of the bill as to eliminate "unreasonable" "hurdles" to the replacement of dwellings on EFU land). The House Committee on Land Use heard testimony to the effect that, because only existing dwellings were eligible for replacement, the statute incentivized landowners to leave dwellings intact, even if they were dilapidated or damaged. See, e.g. , Testimony, House Committee on Land Use, HB 2746, Feb. 21, 2013, Ex. 7 (statement of David Tonges) (stating that his family "would like the option" to remove houses that "sit vacant" due to their "poor condition" and "have the ability to rebuild them at later date"); id ., Ex. 6 (statement of Mark J. Unger) (stating that family's farm property "has an abandoned house on it that is beyond repair" that is "not eligible for a building permit," and his family's goal was "simply to replace what already exists there"); id ., Ex. 5 (statement of Dave Vanasche) (stating that he supported the bill because it would allow his farm to replace a "farm house [that] did not *51 qualify as a replacement dwelling, because it no longer has sound walls, roof, and plumbing"). Thus, as introduced, the bill allowed for the issuance of a permit when an applicant provides sufficient evidence that the former dwelling "has or had " the required structural features, or that "the dwelling is, for purposes of ad valorem property taxation, assessed as a dwelling." HB 2746 (2013), introduced (Feb. 6, 2013).
The House Committee on Land Use amended HB 2746 to require that the permitting authority find that the former dwelling satisfies (or formerly satisfied) the structural requirements and that the dwelling "is assessed as a dwelling for purposes of ad valorem taxation and has been for the previous five property tax years." HB 2746 (2013), A-Engrossed (Apr. 26, 2013). That amendment would appear to have made demolished or destroyed buildings ineligible for replacement altogether, unless the applicant could establish that the dwellings had been improperly removed from the tax rolls by someone other than the applicant. Id .
The bill was further amended in the Senate, however. The Senate Committee on Rural Communities and Economic Development *43 added the language now in dispute-the "unless" phrases in subparagraphs (A) and (B). Thus, the amended bill continued to contain a general "look-back" period of five years for existing buildings, with exceptions applicable where "the value of the dwelling was eliminated as a result of the destruction, or demolition in the case of restoration, of the dwelling." See HB 2746 (2013), B-Engrossed (June 5, 2013). Following that change, the Staff Measure Summary for the bill described the measure and new amendment in relevant part:
"WHAT THE MEASURE DOES: Modifies requirements to alter restore, or replace dwelling on exclusive farm use (EFU) land. *** Requires finding that dwelling was assessed for purposes of ad valorem taxation for lesser of previous five property tax years or from time dwelling was erected and became subject to assessment, unless value eliminated due to destruction or demolition or dwelling improperly removed from tax roll.
"* * * * *
*52 "EFFECT OF COMMITTEE AMENDMENT: Requires finding that dwelling was assessed for purpose of ad valorem taxation-unless value eliminated due to destruction or demolition-for lesser of previous five property tax years, or from time dwelling erected and became subject to assessment."
Staff Measure Summary, Senate Committee on Rural Communities and Economic Development, HB 2746, June 5, 2013. Although the explanation in the Staff Measure Summary is far from comprehensive, the description of the "effect of [the] committee amendment" does tend to confirm that the amendment was added in order to exclude destroyed or demolished buildings from the "lesser of" requirement altogether. See State Treasurer v. Marsh & McLennan Companies, Inc. , 353 Or. 1, 13, 292 P.3d 525 (2012) (relying on a Staff Measure Summary as relevant legislative history). That explanation is consistent with text of the statute.[2]
In light of the text, context, and legislative history, we conclude that LUBA erred in its construction of Oregon Laws 2013, chapter 462, section 2(2)(b). We conclude that the statute exempts destroyed or demolished buildings from the finding otherwise required by paragraph (b). We therefore reverse and remand LUBA's order for further proceedings consistent with this opinion, including a determination of whether OAR 660-033-0130 is consistent with the proper construction of the 2013 Act.[3]
Reversed and remanded.

Other portions of the 2013 Act do not clarify whether the legislature intended to entirely exempt demolished dwellings from the "lesser of" requirement. Subsection 2(3) accounts for situations in which the former dwelling satisfies the structural requirements in paragraph (2)(a) but does not satisfy the taxation requirements in paragraph (2)(b). Yet, that does not make clear whether a demolished or destroyed dwelling can satisfy paragraph (2)(b) by being excused from the taxation requirement entirely.

In reaching its construction of the 2013 Act, LUBA relied substantially on testimony from Dave Hunnicutt, a nonlegislator involved in the drafting process, before the Senate Committee on Rural Communities and Economic Development on May 16, 2013, and May 30, 2013. That testimony is inconclusive as to the interpretive question before us, and, therefore, we do not rely upon it.

Because we conclude that LUBA erred with respect to the sole basis for its order (the meaning of the taxation requirement in the 2013 Act), we do not address the merits of respondent's other assignments of error before LUBA.