Argued and submitted June 12, 2020, affirmed February 9, 2022

Nancy Johnston KASER,
*Plaintiff-Appellant,*
*v.*
PUBLIC EMPLOYEES RETIREMENT SYSTEM,
State of Oregon,
*Defendant-Respondent.*
Marion County Circuit Court
18CV07592; A170559

506 P3d 1134

In this appeal arising out of a challenge to a final order in an other than contested case, petitioner asserts that the trial court erred in affirming the determination by the Public Employees Retirement System (PERS) regarding the amount of petitioner's creditable service for purposes of her retirement benefits calculations. Petitioner argues that PERS erroneously interpreted ORS 238.450(4), which provides, in part, that PERS shall "determine the accuracy of the disputed information" provided to it by petitioner's employer. Petitioner contends that the statute requires PERS to take greater investigative measures than it took in this case. PERS responds that it did not err in interpreting the statute. *Held*: The text, context, and legislative history of ORS 238.450(4) contradict petitioner's view that the statute requires a more robust investigation than PERS undertook. Accordingly, PERS did not erroneously interpret ORS 238.450(4) and therefore the trial court did not err in upholding the agency's final order.

Affirmed.

Sean E. Armstrong, Judge.

Jon Weiner argued the cause for appellant. On the briefs was Sharia Mayfield.

Robert M. Wilsey argued the cause for respondent. On the brief were Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Judy C. Lucas, Assistant Attorney General.

Before Ortega, Presiding Judge, and Shorr, Judge, and Powers, Judge.

POWERS, J.

Affirmed.

**POWERS, J.**

In this appeal arising out of a challenge to a final order in an other than contested case, petitioner asserts, among other arguments, that the trial court erred in affirming the determination by the Public Employees Retirement System (PERS) that petitioner's creditable service for purposes of her retirement benefits calculations was 29 years and 10 months. As explained below, we conclude that the trial court did not err in concluding that PERS complied with the requirement in ORS 238.450(4) to "determine the accuracy of the disputed information" provided to PERS by petitioner's employer and we reject petitioner's remaining arguments without written discussion. Accordingly, we affirm.

Petitioner appeals from the trial court's judgment as provided by ORS 183.500.[1] Our function under ORS 183.500 "is to determine whether the circuit court correctly applied the standard of review under ORS 183.484." *Hoekstre v. DLCD*, 249 Or App 626, 634, 278 P3d 123, *rev den*, 352 Or 377 (2012). Under ORS 183.484(5)(a), the circuit court reviews an order to determine if "the agency has erroneously interpreted a provision of law," and under ORS 183.484(5)(c), the court reviews for whether the agency order is "supported by substantial evidence in the record." Thus, as a practical matter, we review—as the circuit court did—to determine whether PERS erred in construing ORS 238.450(4). *See G.A.S.P. v. Environmental Quality Commission*, 198 Or App 182, 187, 108 P3d 95, *rev den*, 339 Or 230 (2005) (explaining our standard of review). In reviewing an order for substantial evidence, we review "the record created in the circuit court, and do not hold another trial-type hearing" like the one held in the circuit court. *See Querbach v. Dept. of Human Services*, 308 Or App 131, 134, 480 P3d 1030 (2020), *rev allowed*, 368 Or 138 (2021) (describing the difference between our role and the circuit court's role when reviewing a challenge to an agency order).

---

[1] ORS 183.500 provides:

"Any party to the proceedings before the circuit court may appeal from the judgment of that court to the Court of Appeals. Such appeal shall be taken in the manner provided by law for appeals from the circuit court in suits in equity."

The facts relevant to our discussion are undisputed. Petitioner worked at the Oregon State Hospital, a division of the Oregon Health Authority (OHA), and, in early 2015, took several leaves of absence. In mid-2016, petitioner retired from OHA. After petitioner retired, PERS adjusted petitioner's creditable service by removing four months based on information provided by OHA that showed that she was not entitled to creditable service during her 2015 leaves of absence. In a letter dated July 20, 2016, PERS notified petitioner of that adjustment via an eligibility review, which petitioner was entitled to challenge in an administrative appeal. The next day on July 21, PERS notified petitioner that she had 29 years and 8 months of creditable service via a Notice of Entitlement, which petitioner was entitled to dispute within 240 days. Petitioner first challenged PERS's eligibility-review determination, asserting that OHA had failed to apportion her paid time off in the manner that she had requested, which would have allowed her to earn creditable service while on leave. PERS reviewed the matter by comparing paystubs that petitioner provided with OHA's reports and by confirming with OHA that petitioner was in an unpaid status during her leaves of absence. Based on that information, PERS adhered to its earlier determination that petitioner did not qualify for creditable service during her 2015 leave periods. Petitioner did not request a contested case hearing in response to that determination.

Meanwhile, unrelated to petitioner's challenge, PERS added two additional months of creditable service from a period unrelated to the 2015 leave. In February 2017, PERS notified petitioner that she had 29 years and 10 months of creditable service.

In March 2017, petitioner timely disputed the Notice of Entitlement dated July 21, 2016, and the determination that she had 29 years and 10 months of creditable service. PERS reviewed the matter and ultimately issued a final order, confirming its determination related to petitioner's 2015 leave and concluding that petitioner's creditable service was 29 years and 10 months.

Petitioner then sought judicial review of the final order pursuant to ORS 183.484, asserting that PERS erred

in removing four months of service credit, thereby reducing her creditable service to 29 years and 10 months. Before the circuit court, petitioner argued that PERS had a statutory duty under ORS 238.450 to investigate and resolve the dispute between petitioner and OHA as to how her 2015 leave was recorded. PERS responded by analogizing its function to that of a third-party administrator and argued that ORS 238.450 allows it to communicate with PERS-participating employers to either affirm the accuracy of the information provided by the employer or have the employer provide corrected information for PERS to recalculate the retirement benefits. The trial court agreed with PERS's position and affirmed the agency's final order. This timely appeal followed.

Before this court, the parties renew their arguments. Petitioner argues that the phrase "the system shall determine the accuracy of the disputed information" in ORS 238.450(4) means that PERS must take greater investigative measures than it took in this case, and that PERS cannot determine the accuracy of disputed information by merely relying on an employer's assurance that it had transmitted full and correct information. Emphasizing the investigative aspect of the word "determine," petitioner argues that, if PERS found information provided by the employee to be more credible than information provided by the employer, then PERS could rely on the employee's information to allow PERS to make corrections to the benefit calculation. PERS responds that the trial court correctly ruled that ORS 238.450 does not authorize PERS to resolve substantive disputes between employers and employees and that PERS lacks authority to alter employer-provided information. PERS argues that, although ORS 238.450(4) requires it to "determine the accuracy of the disputed information," the statute does not direct PERS on how to make that determination. According to PERS, ORS 238.450(4) does not require it to investigate the accuracy of payroll records whenever an employee raises a dispute over how the employer coded the payroll information; rather, PERS reiterates that it is permitted to communicate with the employer to affirm the accuracy of the information provided or to have the employer provide correct information that PERS then uses to recalculate the retirement benefits.

Thus, as framed by the parties' arguments, we must determine whether PERS erroneously interpreted ORS 238.450(4), which provides, in part, that PERS shall "determine the accuracy of the disputed information" provided to it by petitioner's employer. When a disputed statutory term is part of a regulatory framework administered by an agency, we first determine whether the term is an "exact" term, an "inexact" term, or a "delegative" term. *See Blachana, LLC v. Bureau of Labor & Industries*, 354 Or 676, 687, 318 P3d 735 (2014) (so stating). The parties implicitly assume, and we agree, that the relevant phrase in ORS 238.450(4)—"determine the accuracy of the disputed information"—is an "inexact term." As the Supreme Court has explained, "inexact" terms "communicate a complete policy statement, but the words used may be imprecise, requiring further interpretation." *Blachana, LLC*, 354 Or at 687; *see also Springfield Education Assn. v. School Dist.*, 290 Or 217, 224-28, 621 P2d 547 (1980) (summarizing the "inexact term" category of statutory terms). As an "inexact term," the interpretation by PERS is not entitled to deference on review, *Blachana, LLC*, 354 Or at 687, and we turn to the familiar method of statutory interpretation set out in *State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009), to ascertain the legislature's intent.

We begin with the statute's text to analyze the meaning of the disputed term, "pay[ing] careful attention to the exact wording of the statute." *DCBS v. Muliro*, 359 Or 736, 745, 380 P3d 270 (2016) (internal quotation marks omitted). If the statute does not define the disputed term, we apply the ordinary tools of statutory construction to determine the term's intended meaning. *Id.* If the legislature has not defined a term, and nothing suggests that the legislature intended the term to have a specialized definition, we look to the ordinary meaning of the term for guidance regarding what "the legislature would naturally have intended." *Id.* at 746. We often consult dictionary definitions of the term, on the assumption that, if the legislature did not give the term a specialized definition, the dictionary definition reflects the meaning that the legislature would have intended. *Id.* We do not, however, interpret statutes solely on the basis of dictionary definitions; instead, we examine word usage in context to determine

which among competing definitions is the one that the legislature more likely intended. *Id.* If the immediate context does not clarify the meaning of a word or term, we consider how the term is used in other related statutes because, "in the absence of evidence to the contrary, we ordinarily assume that the legislature uses terms in related statutes consistently." *State v. Cloutier*, 351 Or 68, 99, 261 P3d 1234 (2011).

Here, we examine the meaning of the word "determine," as used in ORS 238.450(4), beginning with the pertinent text. ORS 238.450 provides, in part:

> "(2)   A member of the system may dispute the accuracy of the information used by the system in making the computation only by filing a written notice of dispute with the system[.]
>
> "* * * * *
>
> "(4)   Upon receiving a notice of dispute under subsection (2) of this section, the system shall determine the accuracy of the disputed information and make a written decision either affirming the accuracy of the information and computation based thereon or changing the computation using corrected information. The system shall provide to the member a copy of the decision and a written explanation of any applicable statutes and rules. The member is entitled to judicial review of the decision as provided in ORS 183.484 and rules of the board consistent with applicable statutes."

The legislature has not defined the term "determine," and nothing in the text or context of ORS 238.450 suggests that the legislature intended the term "determine" to have a specialized definition. We therefore look to the ordinary meaning of the term.

The term "determine" commonly means:

> "1 a : to fix conclusively or authoritatively * * * b : to settle a question or controversy about : decide by judicial sentence * * * c : to come to a decision concerning as the result of investigation or reasoning * * * d : to settle or decide by choice of alternatives or possibilities[.]"

*Webster's Third New Int'l Dictionary* 616 (unabridged ed 2002) (emphasis omitted). Alone, those definitions do not

clarify the legislature's intended meaning, as some of the definitions relate to a decision from an investigation while others connote decision-making, without reference to an investigation.

To assess which among those competing definitions the legislature intended, we consider the term "determine" in context. As used within the phrase "the system shall determine the accuracy of the disputed information," any of the four dictionary definitions could apply. Because the immediate context does not clarify the meaning of "determine," we consider how the term is used in other related statutes.

As context for ORS 238.450, the neighboring statutes—ORS 238.445 to 238.480—use "determine" in a manner that is incompatible with petitioner's proposed interpretation. That is, as used in the neighboring statutes, "determine" is not synonymous with a robust investigation. For example, the statute governing court judgments and payment of benefits to alternate payees provides that the Public Employees Retirement Board (PERB) "shall adopt rules that provide for: *** [t]he establishing of criteria to determine whether domestic relations judgments, orders and agreements comply with this section[.]" ORS 238.465 (3)(b). The estimated benefit payments statute provides that PERB "shall continue to mail estimated payments *** until such time as the correct amount of the monthly payment is determined." ORS 238.455(2). The manner in which these neighboring statutes use the term "determine" is inconsistent with petitioner's interpretation that "determine" necessarily entails a robust investigation. As used in those statutes, "determine" is better understood, as PERS's interpretation suggests, to denote decision-making, in which investigation may be incidental but does not play a primary role. As was the case here, PERS made a decision regarding petitioner's creditable service after PERS confirmed with OHA that OHA had sent complete information and that OHA sent the information that it intended to transmit.

The use of "determine" in other statutes within ORS chapter 238 also contradicts petitioner's view that ORS 238.450(4) necessitates a more robust investigation

than PERS undertook. *See, e.g.*, ORS 238.618 ("[PERB] may deny or terminate participation by an employer in [PERS], and may deny or terminate membership in the system for any employee, if [PERB] determines that allowing participation \*\*\* would cause the system or the Public Employees Retirement Fund to lose qualification[.]"); ORS 238.378(1) ("The Department of Revenue shall provide to [PERB] such information on Oregon personal income tax returns as [PERB] deems necessary to determine whether the payments made to the person \*\*\* are subject to Oregon personal income tax[.]"); ORS 238.608 ("If [PERB] determines that members in the categories \*\*\* have a life expectancy that is substantially shorter than the life expectancy of members of the system generally, [PERB] shall adopt and use separate actuarial equivalency factor tables \*\*\* for the purpose of computing the payments[.]"). As those statutes illustrate, "determine" is better understood to denote decision-making, to which investigation may be incidental. Finally, we have reviewed the legislative history and conclude that it contains no insight into the interpretative issue. Accordingly, because PERS did not erroneously interpret the statute, the trial court did not err in upholding the agency's final order.

Affirmed.