Submitted April 1, 2022, reversed and remanded February 15, 2023

Stephen LEE (HOUSE OF R.E.A.P.),
*Petitioner-Appellant,*

*v.*

SECRETARY OF STATE,
*Respondent-Respondent.*

Marion County Circuit Court
20CV32675; A175349

526 P3d 775

In this case, petitioner sought judicial review of a Secretary of State decision that denied reinstatement to The House of R.E.A.P., an administratively dissolved corporation sole for which petitioner was the sole director and incorporator. Relying on ORS 65.067(5), which prohibits the formation or incorporation of new corporations sole after 2015 while permitting preexisting corporations sole to "continue to operate," the secretary contended that she was prohibited from reinstating petitioner's dissolved corporation sole. The circuit court agreed and dismissed the petition. Petitioner appeals from that judgment of dismissal, contending that the circuit court erred in applying ORS 65.067(5) to prohibit the corporation sole's reinstatement. In addition to defending the trial court's ruling on the merits, the secretary argues that we should dismiss this appeal because petitioner is a *pro se* litigant appearing on behalf of a corporation in violation of ORS 9.320. *Held*: First, the Court of Appeals concluded that petitioner had individual standing under the APA to seek judicial review of the secretary's action and was a "natural person" who, pursuant to ORS 9.320, was permitted to prosecute his case "in person." On the merits, the court concluded that ORS 65.067 does not prohibit the reinstatement of an administratively dissolved corporation sole. Thus, the trial court erred in granting the secretary's motion to dismiss the petition.

Reversed and remanded.

Mary Mertens James, Judge.

Stephen Lee filed the briefs *pro se*.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Christopher Page, Assistant Attorney General, filed the brief for respondent.

Before Shorr, Presiding Judge, and Mooney, Judge, and Pagán, Judge.

SHORR, P. J.

Reversed and remanded.

SHORR, P. J.

This case reaches us after petitioner sought judicial review of a Secretary of State decision that denied reinstatement to The House of R.E.A.P., an administratively dissolved corporation sole for which petitioner was the sole director and incorporator.[1] Relying on ORS 65.067(5), which prohibits the formation or incorporation of new corporations sole after 2015 while permitting preexisting corporations sole to "continue to operate," the secretary contended that she was prohibited from reinstating petitioner's dissolved corporation sole. The circuit court agreed and dismissed the petition. Petitioner appeals from that judgment of dismissal, contending that the circuit court legally erred in applying ORS 65.067(5) to prohibit the corporation sole's reinstatement. For the reasons that follow, we reverse.

Because this matter was dismissed at the pleading stage, we take the pertinent facts from the petition for judicial review and consider those facts, as well as all reasonable inferences that may be drawn from them, as true. *Pete's Mountain Homeowners v. Ore. Water Resources*, 236 Or App 507, 510, 238 P3d 395 (2010). In December 2014, petitioner incorporated The House of R.E.A.P., a church, as a corporation sole pursuant to ORS 65.067 (2013), *amended by* Or Laws 2015, ch 278, § 1. In 2015, petitioner failed to file the corporation's required annual report with the Secretary of State, and in February 2016, the secretary administratively dissolved The House of R.E.A.P. pursuant to ORS 65.651.

Several years later in July 2020, petitioner sought to reinstate The House of R.E.A.P. with the Secretary of State and, on the corporation's behalf, mailed an application for reinstatement and related fees to the secretary. The following month, the secretary denied the reinstatement application, asserting that, "[e]ffective June 8, 2015, Oregon law now prevents the filing of new or reinstating corporations sole filings." Petitioner sought judicial review of the secretary's denial in the circuit court, arguing that the 2015 law that the secretary had relied on did not bar the reinstatement of administratively dissolved corporations sole and

---

[1] As we discuss further below, a corporation sole is a relatively uncommon type of nonprofit religious corporation recognized by ORS 65.067.

that The House of R.E.A.P. had met the requirements for reinstatement under ORS 65.654.

The secretary moved under ORCP 21 A to dismiss the petition for failure to state a claim, arguing that "Oregon law expressly prohibits the Secretary of State from reinstating corporation soles." Following a hearing, the circuit court granted the secretary's motion and entered a judgment dismissing the petition. Petitioner timely appealed.

Before we turn to the merits of petitioner's argument that the 2015 amendments to ORS 65.067 do not prohibit reinstatement following administrative dissolution, we must address the secretary's renewed argument that we should dismiss this appeal because petitioner is a *pro se* litigant appearing on behalf of a corporation in violation of ORS 9.320. *See* ORS 9.320 (although a party may generally prosecute or defend an action "in person," a party that is "not a natural person" must appear "by attorney in all cases, unless otherwise specifically provided by law"); *see also Oregon Peaceworks Green, PAC v. Sec. of State*, 311 Or 267, 271, 810 P2d 836 (1991) (only persons licensed to practice law may represent corporations and other entities in court). The Appellate Commissioner denied the secretary's earlier motion to dismiss the appeal, concluding that, although petitioner's "ultimate aim on appeal may be to obtain a determination that his corporation sole should have been reinstated by respondent, at this point, there is no corporation; appellant cannot purport to represent a corporation that does not exist at this time."

The secretary now renews her argument that "there are no causes of action or claims of error in this proceeding pertaining to [petitioner] as an individual" and that petitioner is "pursuing this action on behalf of the corporation and seeking relief for it." In the secretary's view, the Appellate Commissioner's decision was flawed in part because petitioner's corporation sole *does* continue to exist, albeit in a more limited form, after dissolution. *See* ORS 65.651(3) (an administratively dissolved corporation "continues the corporation's corporate existence" but may only carry on activities "necessary or appropriate to wind up and liquidate the corporation's affairs").

In response, petitioner denies that he is appearing on behalf of The House of R.E.A.P. Instead, he contends that "he was adversely affected and/or is personally aggrieved by the [circuit] court's dismissal order," giving him "standing to bring this appeal in his own name." *See* ORS 183.480(1) ("any person adversely affected or aggrieved by an order * * * is entitled to judicial review of a final order"). Petitioner claims as personal injuries his payment of the $300 reinstatement fee and his inability to "carry out [his] ministerial duties, earn a living through the corporation, and accomplish [his] life's goals."

We find it helpful to begin our analysis from the fact that Lee alone, in his personal capacity, sought judicial review of the secretary's denial of the House of R.E.A.P.'s reinstatement application. The House of R.E.A.P. corporation was not joined to that judicial review action or otherwise made a party to it. The secretary did not challenge petitioner's standing in the circuit court and does not do so on appeal either; the secretary's argument is cabined to ORS 9.320 alone. However, as noted above, petitioner's opposition to the secretary's motion to dismiss this appeal relied on his asserted standing to bring this action himself. Because we have an "independent obligation to consider jurisdictional issues, including standing," even where the circuit court did not decide the issue and the parties have failed to fully explore it, *Concienne v. Asante*, 299 Or App 490, 501, 450 P3d 533 (2019), *rev den*, 366 Or 135 (2020) (internal quotation marks omitted), we begin by considering petitioner's standing.

We therefore turn to our analysis of standing before we return to whether Lee may appear to represent himself *pro se* in this action. The Administrative Procedures Act (APA) provides the means by which a person may seek judicial review of actions of the Secretary of State. As relevant here, ORS 183.480(1) provides that "any person adversely affected or aggrieved by an order or any party to an agency proceeding is entitled to judicial review of a final order, whether such order is affirmative or negative in form." *See also* ORS 183.310(6)(b) (as relevant here, a final order is a "final agency action expressed in writing [that] preclude[s] further agency consideration of the subject matter of the

statement or declaration"). We have explained that a person seeking to demonstrate that they were adversely affected or aggrieved by a final agency order must establish one or more of the following factors: (1) that they "suffered an injury to a substantial interest resulting directly" from the challenged order, (2) that they seek "to further an interest that the legislature expressly wished to have considered," or (3) that they have "such a personal stake in the outcome of the controversy as to assure concrete adverseness to the proceeding." *McNichols v. Dept. of Fish and Wildlife*, 308 Or App 369, 372, 482 P3d 208 (2021) (citing *People for Ethical Treatment v. Inst. Animal Care*, 312 Or 95, 101-02, 817 P2d 1299 (1991), *abrogation on other grounds recognized by Couey v. Atkins*, 357 Or 460, 515, 355 P3d 866 (2015)). "The legislature has not granted standing under ORS 183.480(1) to those persons who merely are dissatisfied with the agency's order, or who have only an abstract interest * * * in the question presented, or who are mere bystanders." *People for Ethical Treatment*, 312 Or at 102 (internal quotation marks and citations omitted).

Here, Lee explained in his petition that he was "the sole incorporator and overseer" of The House of R.E.A.P. and had founded the church as its minister in 2014. On appeal, Lee has further asserted that his role in the church constitutes his profession and that the secretary's action prevents him from continuing that vocation. Accepting those assertions as part of our independent obligation to assess standing, we conclude that petitioner has sufficiently established that he has a personal stake in whether his church is permitted to resume operations in its organized form, and thus was adversely affected or aggrieved by the secretary's action. As a result, petitioner has standing under the APA to seek judicial review. Petitioner also has the right to appeal the circuit court's judgment to our court. *See* ORS 183.500 ("Any party to the proceedings before the circuit court may appeal from the judgment of that court to the Court of Appeals.").

On first blush, it may seem that The House of R.E.A.P. should be the "real party in interest." Indeed, in other contexts, we have said that "a party who is not the 'real party in interest' to a claim necessarily lacks standing." *Concienne*, 299 Or App at 498. However, the source of

law that determines those issues "is the statute that confers standing in the particular proceeding that the party has initiated." *Kellas v. Dept. of Corrections*, 341 Or 471, 477, 145 P3d 139 (2006). Here, that source of law is ORS 183.480(1), which confers standing to "any person adversely affected or aggrieved by an order" without concern to whether that person is the "real party in interest." *See also* ORCP 26 A (although "[e]very action shall be prosecuted in the name of the real party in interest[,] *** a party *authorized by statute* may sue in that party's own name without joining the party for whose benefit the action is brought" (emphasis added)).

We return to the issue presented by ORS 9.320. As relevant here, ORS 9.320 provides that "[a]ny action, suit, or proceeding may be prosecuted or defended by a party in person, or by attorney, except that the state or a party that is not a natural person appears by attorney in all cases, unless otherwise specifically provided by law." In other words, although an individual person may represent themselves in an action *pro se*, only licensed attorneys may represent entities—such as corporations—in court. *Oregon Peaceworks Green, PAC*, 311 Or at 270-71.

Thus, although petitioner may represent himself on appeal, he may not represent The House of R.E.A.P. But again, The House of R.E.A.P. is not a party to this appeal and was not a party to the review proceeding in the court below. Lee alone is the appellant before us. That fact is important, because ORS 9.320 addresses requirements placed on *parties*. *See* ORS 9.320 ("Any action, suit, or proceeding may be prosecuted or defended by a *party* in person, or by attorney, except that the state or a *party* that is not a natural person appears by attorney in all cases, unless otherwise specifically provided by law." (Emphasis added.)). Lee is a "natural person" who, pursuant to ORS 9.320, may prosecute his case "in person."

The case law applying ORS 9.320 illustrates its proper application. In *Oregon Peaceworks Green, PAC*, an unincorporated political action committee sought judicial review of a fine imposed on it by the Secretary of State. 311

Or at 269. However, the committee's petitions for judicial review were signed by its treasurer, who was not an attorney and also not a party to the action. *Id.* Thus,

> "[t]he Secretary of State moved the Court of Appeals to strike the petitions for judicial review on the ground that they were 'prepared, signed and filed by a person who is not and was not then an active member of the Oregon State Bar, and who is not herself a party to this proceeding, and [who] therefore lacked authority to take such action on her own behalf or on behalf of Oregon Peaceworks Green PAC.'"

*Id.* at 269-70. Similarly, in *Marguerite E. Wright Trust v. Dept. of Rev.*, 297 Or 533, 535, 685 P2d 418 (1984), a trust appealed the dismissal of its complaint against certain tax authorities. There, the complaint had been signed by the trust's trustee, Robert J. Wright, an individual who was, again, not an attorney and not a party to the complaint. *Id.* That later point was particularly salient to the court's analysis:

> "Robert J. Wright is not a party to this lawsuit. The suit was not brought by Robert J. Wright in his own name against the Department of Revenue nor by Robert J. Wright, trustee on behalf of the Marguerite E. Wright Trust. The named plaintiff was the Marguerite E. Wright Trust."

*Id.* at 538.

Thus, in both cases, the party seeking redress in the court was an entity, and in both cases, individuals who were neither attorneys nor parties themselves signed and submitted legal filings for those entities. As a result, both cases elicited the same result: ORS 9.320 prohibited the non-party, nonattorney individuals from purporting to represent the entities *pro se*. *Oregon Peaceworks Green, PAC*, 311 Or at 269; *Marguerite E. Wright Trust*, 297 Or at 536-37. Our court has applied ORS 9.320 similarly, dismissing an appeal that was filed on behalf of trust and corporation defendants by individuals who were not attorneys. *See Hansen v. Bennett*, 162 Or App 380, 383 n 4, 986 P2d 633, *rev den*, 329 Or 553 (1999).

The above cases applied ORS 9.320 in a manner consistent with the text of the statute—requiring that "a

party that is not a natural person appears by attorney in all cases." In the instant case, however, the only petitioner is Lee, and ORS 9.320 explicitly permits him to prosecute his case "in person."

With that said, the secretary appears to advance the more nuanced argument that the *substance* of petitioner's arguments are arguments made on behalf of the dissolved corporation sole. To the extent that the secretary advances that argument, we disagree that ORS 9.320 would bar petitioner's self-representation for that reason. Although Lee's interests and the corporation's interests in this matter are closely aligned—if not indistinguishable at times—ORS 9.320 only specifies requirements placed on parties, and explicitly permits individuals such as petitioner to proceed "in person."

Finally, we briefly acknowledge the Appellate Commissioner's conclusion, in denying the secretary's motion to dismiss the appeal, that, "[i]n the absence of reinstatement, there is no corporation on behalf of which appellant could purport to appear." The secretary correctly notes that, pursuant to ORS 65.651(3), "[a] corporation administratively dissolved continues the corporation's corporate existence but may not carry on any activities except those necessary or appropriate to wind up and liquidate the corporation's affairs *** and notify the corporation's claimants ***." Further, under ORS 65.637, a dissolved corporation may continue to sue and be sued. *See* ORS 65.637(2)(d)-(e) (dissolution does not "[p]revent commencement of a proceeding by or against the corporation in the corporation's corporate name" or "[a]bate or suspend a proceeding pending by or against the corporation"). Nevertheless, even assuming that The House of R.E.A.P. as a corporate entity continues to exist in some form (which we need not decide for our purposes), that continued existence does not change or affect our analysis of Lee's individual standing under the APA to seek judicial review of the secretary's action, or change our understanding of ORS 9.320 as permitting individuals to engage in self-representation. Thus, we reject the secretary's renewed argument for dismissal and proceed to the merits of petitioner's assignment of error.

As explained earlier, petitioner assigns error to the circuit court's grant of the secretary's motion to dismiss. That ruling was based on the court's legal conclusion, on judicial review, that ORS 65.067(5) prohibited the reinstatement of administratively dissolved corporations sole. Our standard of review echoes that of the circuit court—whereas the circuit court reviewed the secretary's decision to determine whether the agency "erroneously interpreted a provision of law," ORS 183.484(5)(a), we review the circuit court judgment to determine whether it correctly assessed the agency's decision under that standard. *Kaser v. PERS*, 317 Or App 498, 499, 506 P3d 1134, *rev den*, 370 Or 214 (2022). Thus, as a practical matter, we review—as the circuit court did—to determine whether the secretary erred in construing ORS 65.067.

Petitioner contends that the 2015 amendments to ORS 65.067 only prohibit the formation and incorporation of new corporations sole and do not prohibit the reinstatement of administratively dissolved corporations sole. The secretary, in turn, points to the "grandfathering provision" of the 2015 amendments, which permits existing corporations sole to "continue to operate"; in the secretary's view, an administratively dissolved corporation sole no longer continues to operate and thus is ineligible for reinstatement. The parties' dispute as to the meaning of ORS 65.067 presents a question of statutory interpretation, and thus we turn to our familiar methodology for determining the legislature's intent. *See State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009) (explaining that we first examine the text and context, as well as any legislative history that we deem useful to our analysis, and that if the legislature's intent remains unclear after considering those sources, we may resort to general maxims of statutory construction).

A corporation sole differs from other nonprofit religious corporations "only in that the corporation sole does not have a board of directors, does not need to have officers and is managed by a single director who is the individual who constitutes the corporation and is the corporation sole's incorporator or the successor of the incorporator." ORS 65.067(1). Thus, where a corporation sole has no officers, the

director may perform those acts normally reserved to corporate officers. *See* ORS 65.067(3).

In 2015, the legislature passed Senate Bill (SB) 77 (2015), see Oregon Laws 2015, chapter 278, which substantially curtailed corporations sole as a corporate form. The most sweeping aspect of the legislation was the creation of ORS 65.067(5), which states:

> "A corporation sole may not be formed or incorporated in this state on or after June 8, 2015. A corporation sole that exists before June 8, 2015, may continue to operate as a corporation sole, subject to the provisions of this chapter."

The legislation also amended ORS 65.067(3). Before the amendments, that provision stated, in part, that "[a]ll of the provisions of ORS 65.044 to 65.067 apply to a corporation sole," specifically referencing a handful of statutes concerning the incorporation of nonprofit corporations. ORS 65.067(3) (2013). The 2015 amendments changed that text to read, "[e]xcept to the extent that a provision of this chapter is not applicable to a corporation sole's form of organization, all of the provisions of this chapter apply to a corporation sole." ORS 65.067(3). Thus, the 2015 amendments did three main things: (1) they prohibited the "form[ation] or incorpora[tion]" of new corporations sole after June 8, 2015; (2) they permitted existing corporations sole to "continue to operate," subject to the provisions of ORS chapter 65; and (3) they made corporations sole explicitly subject to all of the provisions in ORS chapter 65 that are "applicable to a corporation sole's form of organization."

The parties appear to agree, or at least do not dispute on appeal, that the first part of ORS 65.067(5) specifying that "[a] corporation sole may not be formed or incorporated in this state on or after June 8, 2015" does not address or curtail the reinstatement of administratively dissolved corporations sole. Incorporation, dissolution, and reinstatement are all distinct concepts under ORS chapter 65, and we readily conclude that the above text merely does what it says it does: prevents the formation or incorporation of new corporations sole. Thus, we turn to the other two major textual amendments.

ORS 65.067(5) goes on to say that "[a] corporation sole that exists before June 8, 2015, may continue to operate as a corporation sole, subject to the provisions of this chapter." In the secretary's view, "continue to operate" is the important operative text. And indeed, we agree with the secretary's understanding of that term. Although "continue to operate" is not defined in the chapter, it is a phrase of common usage. The verb "continue," as used here, means "to be steadfast or constant in a course of activity : keep up or maintain esp. without interruption a particular condition, course, or series of actions." *Webster's Third New Int'l Dictionary* 493 (unabridged ed 2002). "Operate," as relevant here, is defined as "to cause to function usu. by direct personal effort : WORK" or "to manage and put or keep in operation whether with personal effort or not." *Id.* at 1581. Used together in the phrase "continue to operate," we understand the legislature to have referred to keeping up regular corporate work and activities without any interruption.

However, although we agree with the secretary's interpretation of "continue to operate," we do not assign the same meaning to the sentence as a whole or the wider provision. The secretary posits that, in specifying that a corporation sole existing before the effective date of the statute "may continue to operate as a corporation sole, subject to the provisions of this chapter," the legislature intended that such corporations sole "could continue as ongoing concerns if they remained actively operating." Further, because ORS 65.651(3) specifies that an administratively dissolved corporation "may not carry on any activities except those necessary or appropriate to wind up and liquidate the corporation's affairs," the secretary contends that an administratively dissolved corporation cannot "continue to operate" and is therefore ineligible for the grandfathering provision of ORS 65.067(5).

The problem with the secretary's interpretation is that it reads too much into the text, and in doing so, loses step with the plain language of ORS 67.067(5). On its face, the provision prevents the formation or incorporation of *new* corporations sole but specifies that previously existing ones "may continue to operate," subject to the other provisions of

the chapter. In simple terms, it prohibits newly created corporations sole but permits existing ones to remain active. *See, e.g.*, *Dement Ranch v. Curry County Board of Commissioners*, 306 Or App 315, 322, 474 P3d 435 (2020) (applying our usual understanding of "may" as a "permissive term"). Specifying that existing corporations sole "may continue to operate" merely distinguishes that group of corporations sole—those existing before the statute's effective date—from those that have yet to be formed or incorporated; while new corporations sole are prohibited, ones existing before the statute's effective date are left alone, subject to the rest of ORS chapter 65.

Further, specifying that existing corporations sole may continue to operate "subject to the provisions of this chapter" clarifies that an existing corporation sole's continuing operations are subject to, or regulated by, the chapter's various requirements, standards of conduct, procedures, and other provisions. Those provisions include the right of an administratively dissolved corporation sole to seek reinstatement within five years of dissolution. ORS 65.654. Thus, we disagree with the secretary's contention that ORS 65.067(5) *requires* existing corporations sole to "continue to operate" by timely maintaining annual registration requirements to avoid permanent dissolution.

That brings us to the final relevant aspect of the 2015 amendments: ORS 65.067(3). Before the amendments, that provision stated, in part, that "[a]ll of the provisions of ORS 65.044 to 65.067 apply to a corporation sole," specifically referencing a handful of statutes concerning the incorporation of nonprofit corporations. ORS 65.067(3) (2013). Following the 2015 amendments, that text was changed to read, "[e]xcept to the extent that a provision of this chapter is not applicable to a corporation sole's form of organization, all of the provisions of this chapter apply to a corporation sole." ORS 65.067(3). Thus, the legislature made corporations sole subject to the entirety of the nonprofit corporation chapter—covering topics from articles of incorporation to dissolution and reinstatement—at least where the various provisions are applicable to a corporation that lacks a board of directors and is managed by a single director.

Although the secretary presents the ORS 65.067(3) amendment as a housekeeping measure, that framing minimizes its relevance. The legislature explicitly made all applicable provisions of ORS chapter 65, including the statute outlining the process for reinstatement following administrative dissolution, ORS 65.654, applicable to corporations sole. Indeed, corporations sole must file annual reports and may be administratively dissolved if they do not. *See* ORS 65.787 (explaining annual report requirement); ORS 65.647 (explaining that the secretary may commence an administrative dissolution proceeding if a corporation does not timely deliver its annual report). But a corporation sole may nevertheless take advantage of the reinstatement procedure outlined in ORS 65.654, and the secretary "shall reinstate the corporation" if the reinstatement application meets the delineated requirements. ORS 65.654(2).

In granting the secretary's motion to dismiss the petition, the circuit court seems to have been particularly persuaded by certain legislative history, which the secretary also presses. SB 77 was introduced at the request of the secretary, who intended for it to "limit the future use of a corporation sole as a tax-evasion scheme in Oregon." Exhibit 6, Senate Committee on Business and Transportation, SB 77, Feb 2, 2015 (accompanying statement of Director Peter Threlkel). Peter Threlkel, the Director of the Corporation Division for the Secretary of State's office, told legislators that, "[o]f the 270 active corporation soles registered with the *** Division[,] 175 (65%) have been filed in the last two years by tax scheme promoters as tax avoidance packages costing victims hundreds or thousands of dollars." *Id.*; Exhibit 8, House Committee on Business and Labor, SB 77, Apr 22, 2015 (accompanying statement of Peter Threlkel). Threlkel claimed that the bill would "limit the future promotion of these frivolous tax avoidance schemes by preventing the formation of new corporation soles after the effective date, and grandfathers in existing corporation soles who may continue to operate as long as they maintain annual registration requirements." Exhibit 8, House Committee on Business and Labor, SB 77, Apr 22, 2015 (accompanying statement of Peter Threlkel). Threlkel summarized: The bill would allow existing corporations sole to continue operating,

"but as they fail to renew, then they would eventually drop off and would go away but we would stop new filings from coming in." Audio Recording, House Committee on Business and Labor, SB 77, Apr 22, 2015, at 42:32 (comments of Peter Threlkel), https://olis.oregonlegislature.gov (accessed Feb 7, 2023). Staff summaries prepared for the committees explained that the measure "[g]randfathers existing corporation[s] sole, contingent upon renewing registration." Staff Measure Summary, Senate Committee on Business and Transportation, SB 77, Feb 2, 2015; Staff Measure Summary, House Committee on Business and Labor, SB 77, May 18, 2015. Discussion among legislators was limited to the mechanics of the tax scam itself and concerns that a ban on new corporations sole was ill-tailored towards the tax evasion problem and could harm legitimate churches. *See generally* Audio Recording, Senate Committee on Business and Transportation, SB 77, Feb 2, 2015, at 31:45, https://olis.oregonlegislature.gov (accessed Feb 7, 2023); Audio Recording, House Committee on Business and Labor, SB 77, Apr 22, 2015, at 42:48, https://olis.oregonlegislature.gov (accessed Feb 7, 2023). Neither Threlkel nor the individual legislators addressed the amendment to ORS 65.067(3), the ramifications of administrative dissolution, or whether corporations sole would be eligible for reinstatement following dissolution.

We do not agree with the secretary that the above legislative history compels the conclusion that an administratively dissolved corporation sole "cease[s] to qualify for the protection of the grandfathering provision." We acknowledge that the secretary, who requested the legislation, evidently intended for existing corporations sole to retain their status with the state only if they "maintain annual registration requirements," and expected that "as they fail to renew *** they would eventually drop off and would go away." However, those statements reflect the understanding of the Secretary of State's office, not the legislators. *See DCBS v. Muliro*, 359 Or 736, 753, 380 P3d 270 (2016) (cautioning of the risk of misconstruction from relying on the "cherry-picked quotations" of nonlegislator witnesses). And, regardless, the idea that existing corporations sole would eventually "drop off and *** go away" after failing to make

annual filings is not mutually exclusive with our interpretation that all of the provisions of ORS chapter 65 apply to corporations sole, including the provisions in ORS 65.654 providing a procedure for obtaining reinstatement during a five-year period following administrative dissolution. Reinstatement was simply never mentioned in any of the legislative materials surrounding SB 77, and absent some indication that the legislature intended for corporations sole to be prohibited from the reinstatement process, the secretary's reading is inconsistent with the directive in ORS 65.067(3) that "all of the provisions of this chapter apply to a corporation sole." *See Gaines*, 346 Or at 173 (explaining that "[w]hen the text of a statute is truly capable of having only one meaning, no weight can be given to legislative history that suggests—or even confirms—that legislators intended something different").

As written, ORS 65.067 does not prohibit the reinstatement of an administratively dissolved corporation sole. Thus, the trial court erred in granting the secretary's motion to dismiss the petition.

Reversed and remanded.